

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1541 | **DATE** | 11/29/2001 |
| **CASE TITLE** | Jay F. Flanagan et al. Vs. Allstate Insurance Co. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted in part and denied in part. The claims in count 1 stand; the claims in counts II and III are dismissed. Status hearing set for December 19, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | NOV 3 0 2001 date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | 01 NOV 29 PM 1:56 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY F. FLANAGAN, JAMES W. CARSON, )
JOHN M. CHANEY, ROBERT L. CUSHATT, )
and DONALD W. JONES, individually and on )
behalf of all others similarly situated, )
    and )
LAWRENCE WALNER & ASSOCIATES, )
LTD.; GATTI, GATTI, MAIER, KRUEGER, )
SAYER & ASSOCIATES; and THE LAW )
OFFICES OF RANDALL J. WOLFE; )
                              )
            Plaintiffs, )
                             )
    vs. ) No. 01 C 1541
                             )
ALLSTATE INSURANCE COMPANY, an )
Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
                             )
            Defendants. )

DOCKETED NOV 3 0 2001

## MEMORANDUM OPINION AND ORDER

Five representative plaintiffs have filed this class action against Allstate Insurance Company (Allstate) and the Agent Transition Severance Plan for violations of the Employee Retirement Income Security Act (ERISA). Also, plaintiffs Lawrence Walner & Associates, Ltd., Gatti, Gatti, Maier, Krueger, Sayer & Associates, and the Law Offices of Randall J. Wolfe (law firm plaintiffs) sue defendants seeking attorneys' fees and costs from prior representation and enforcement of state statutory liens. The matter is now before us on defendants' motion to dismiss all of these claims against them. For the reasons stated below, defendants' motion is granted in part and denied in part.

### BACKGROUND

The facts in this case are taken from plaintiffs' complaint. Defendant Allstate writes

and sells insurance policies. Until recently, Allstate sold its policies through employee-agents who participated in Allstate's ERISA-governed retirement and benefit plans, as well as through independent agents who did not participate in the plans. The representative plaintiffs in this case each worked as employee-agents for Allstate until leaving the company or converting to independent contractor status on various dates between December 31, 1998 and May 31, 1999.

Sometime in 1998, Allstate began considering a business overhaul that involved eventual elimination of any employee-agent positions. To expedite this process Allstate allegedly formulated a program of employee harassment, including cutting office expense reimbursement, requiring extended hours, requiring a licensed insurance producer to be present at all times, setting unrealistic contact and sales quotas, threatening termination, and requiring the execution of unnecessary and time-consuming tasks. As a result of the changed work environment, plaintiffs left Allstate or converted to independent contractor status during the first half of 1999. These employee-agents would typically meet with benefits personnel before they left employment or converted their status. Some agents (and at least one of the named plaintiffs) specifically inquired about changes in the agency programs. Most were told there were no changes under consideration. Other agents, as early as the end of 1998, were told that they should delay their decision since beneficial changes were under consideration.

On November 10, 1999, Allstate announced its new business plan, including elimination of all employee-agent positions. Agents were given the opportunity to switch to independent status (with special bonuses) or leave Allstate with the option of selling their books of business or receiving severance payments through the newly-created Agent Transition Severance Plan

(ATSP). Employees were eligible for these benefits if they left Allstate between December 1, 1999 and June 30, 2000.

In January 2000, plaintiff law firms wrote demand letters to Allstate requesting benefits to employee-agents who had left or converted before the new business plan was announced. On April 20, 2000, after receiving no response from Allstate, plaintiff law firms, on behalf of two former employees and all others similarly situated, filed a class action in state court against Allstate requesting separation benefits (Chris Linker and Richard Hughes, etc v. Allstate Insurance Co., No. 00 CH 06186.) In May 2000, Allstate informed some former employees, including the named plaintiffs in the state action, that it had amended the ATSP to include anyone who had retired or left Allstate between June 1, 1999 and November 30, 1999. If a former employee opted to participate in the ATSP, he or she had to release all claims against Allstate, including the claims in the Linker and Hughes suit. One hundred and nineteen former employees, including the named plaintiffs, accepted the severance plan offer. Employees who left before June 1, 1999, remain ineligible for any benefits under the ATSP.

After the ATSP was changed to include employees who had left on or after June 1, 1999, plaintiff law firms sought attorneys' fees and costs for causing the change to the severance plan. In order to recover these fees plaintiff law firms amended the state case complaint to include an ERISA benefits claim on which to base a request for recovery of fees and costs. According to plaintiffs, the Circuit Court found that the ERISA claim should have been brought under a provision of ERISA over which federal courts have exclusive jurisdiction and accordingly dismissed the ERISA claim and request for fees and costs for lack of subject matter jurisdiction.

## DISCUSSION

Standard of Review

On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiffs' favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). A claim will not be dismissed if relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Count I

In count I, plaintiffs claim Allstate violated ERISA in two ways. First, that Allstate breached its fiduciary duty to disclose that it was seriously considering the severance benefit package at issue, and that it had a duty not to misrepresent its consideration of the severance package. Second, that Allstate violated section 510 of ERISA when it allegedly constructively discharged and discriminated against plaintiffs with the intent to interfere with plaintiffs' attainment of eligibility for the severance payments under consideration. For purposes of this motion to dismiss we assume that at all relevant times the severance benefits at issue were under serious consideration by defendants; that the non-disclosure and misrepresentations described in the complaint occurred; and that all descriptions of employment environment are true.

Allstate moves to dismiss the breach of fiduciary duty claim, arguing that it had no legal duty to the plaintiffs in its consideration and creation of the ATSP. Under ERISA, a person is a fiduciary with respect to a plan if he exercises authority and control respecting the

management of a plan, as well as the management and disposition of the plan and its assets. 29 U.S.C. 1002(21)(A). If a fiduciary duty is found, then the fiduciary must "discharge his duties...solely in the interest of the participants and beneficiaries..." 29 U.S.C. 1104(a)(1).

Severance plans are considered welfare benefit plans since they involve unaccrued, unvested benefits. As a result, an employer is free to alter or eliminate severance benefits without consideration of the employees' interests. Young v. Standard Oil, 849 F.2d 1039, 1045 (7th Cir. 1988); McGath v. Auto-Body North Shore, Inc., 7 F.3d 665, 671 (7th Cir. 1993) ("An employer can wear two hats: one as a fiduciary administering a pension plan and the other as the drafter of a plan's terms...an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan.") Plaintiffs accept the findings in Young and McGath, but argue that this situation is distinguishable, and that Allstate has a fiduciary duty to them under the "serious consideration" doctrine, which was not addressed in Young.

While not addressed directly by the Seventh Circuit, many sister circuits have recognized that in certain situations an employer has a fiduciary duty to potential plan members when it is seriously considering a severance plan change. Berlin v. Michigan Bell Telephone Co., 858 F.2d 1154, 1163 (6th Cir. 1988); Maez v. Mountain States Tel. and Tel., Inc., 54 F.3d 1488 (10th Cir. 1995); Bins v. Exxon Company U.S.A., 220 F.3d 1042 (9th Cir. 2000). This fiduciary duty does not concern the business choices in changing a plan, but rather the communications to employees regarding the changes under consideration. Id. Circuit courts have found that if a severance plan amendment or adoption of a replacement plan is under serious consideration, then an employer cannot negligently or intentionally materially mislead potential plan participants. Berlin at 1164; Bins at 1048. At the same time, some

courts have noted that a defendant has no duty to communicate with potential plan participants about the future benefits if the employees do not specifically ask for information. Berlin at 1164; Bins at 1045; Wilson v. Southwestern Bell Telephone Co., 55 F.3d 399 (8th Cir. 1995).

Other courts in our district have addressed the question of ERISA fiduciary duty and have found that if an employee asks about retirement, then the employer has a duty to disclose known information about a retirement incentive under serious consideration. Adamczyk v. Lever Brothers Company, 1999 U.S. Dist. LEXIS 3494, *4 (N.D.Ill. 1999) (also finding that there was no duty to volunteer information without a request); Malone v. Commonwealth Edison Co., 1999 U.S. Dist. LEXIS 16172, *25 (but also finding that a fiduciary need not disclose all internal deliberations). In light of the Seventh Circuit's discussion of severance plan drafting in Young, it is not clear how broadly our circuit would apply the serious consideration reasoning if asked. The doctrine has been adopted in some form by eight other circuits, however, and it is likely that the Seventh Circuit will recognize some cause of action for breach of fiduciary duty when an ERISA plan amendment is under serious consideration.

Allstate argues that even if we adopt the serious consideration reasoning, the present case lies outside its scope. Allstate believes that courts that recognize the serious consideration doctrine have limited the doctrine's applicability to situations where an employer is considering an amendment to an existing plan -- not creating a new plan. Additionally, Allstate asserts that any arising duty only requires that an employer refrain from making affirmative misrepresentations.

Here, plaintiffs allege that they met with benefits personnel to discuss their decisions to

leave Allstate and were not informed of the new beneficial severance plan under consideration. One named plaintiff allegedly inquired specifically about whether there would be any new changes or benefits in the near future that could affect his decision and was not told of any plan under consideration. In these facts plaintiffs have alleged an affirmative misrepresentation. We realize that the misrepresentation concerned the development of a new plan rather than the amendment of an existing plan. At the same time, plaintiffs allege that Allstate already had an existing fiduciary relationship with plaintiffs under an established ERISA-governed retirement and benefit plan. Even though this relationship is distinctive from any duties arising from the later developed severance plan, it points to a relationship between the parties. Considering all of the circumstances alleged, we find that if the plan was under "serious consideration" at the time when inquiries were allegedly made and answers allegedly not given, then there is an adequate claim for breach of fiduciary duty under ERISA.

Plaintiffs have also claimed a violation of section 510 of ERISA, which states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary...for the purpose of interfering with the attainment of any right to which such participant may become entitled under the [employee benefit] plan...." 29 U.S.C. 1140. To state a claim plaintiffs must allege that they belong to the class protected by section 510, that they were qualified for their job positions, and that they were discharged or denied employment under circumstances that provide some basis for believing that prohibitive intent existed. Grottkau v. Sky Climber, Inc., 79 F.3d 70, 74 (7th Cir. 1996); Salus v. GTE Directories Service Corp., 104 F.3d 131, 135 (7th Cir. 1997). Plaintiffs allege that Allstate intimidated and harassed its employee-agents to retire, terminate or convert, so as to minimize

their ERISA benefits under existing plans and to prevent them from maintaining eligibility for the ERISA severance payments that were under consideration.

Defendants contend that plaintiffs cannot state a §510 violation because they are not participants as contemplated by the statute. A "participant" under ERISA is limited to employees, former employees who expect to return to covered employment, or former employees who have a colorable claim to vested benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989). Plaintiffs must meet the test for participant status at the time of their suit, not at the time of the alleged violation. Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1534 (10th Cir. 1993) *citing* Winchester v. Pension Comm. Of Michael Reese Health Plan, Inc., 942 F.2d 1190, 1194 (7th Cir. 1991).

Plaintiffs assert that they have standing as participants to bring this ERISA claim because they are former employees with a colorable claim that will prevail in a suit for benefits. Allstate counters that this §510 claim is barred because plaintiffs have not alleged that there was a plan in effect at the time of the alleged violation or that they were participants in the new plan. Allstate urges us to follow the Tenth Circuit's holding in Raymond, which provides that even if an employee would be a current employee with a reasonable expectation of receiving benefits but for the employer's conduct alleged to be in violation of ERISA, the employee still does not have a colorable claim to vested benefits if he left employment and received all benefits to which he was entitled at that time. Raymond 983 F.2d 1536. *citing* Firestone, 489 U.S. at 117 and *citing* Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir. 1986).

We approach this argument mindful that the requirement of alleging a colorable claim is not a stringent one. Panaras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 790 (7th Cir.

1996). Status is achieved if a claim is in any way arguable; jurisdiction will only be lacking if the claim is so bizarre or so out of line with existing precedent as to fail to meet the minimal threshold of the colorable requirement. *Id*; Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 878-879 (7th Cir. 2001). Plaintiffs have met this minimal threshold and achieved standing by alleging that they were constructively discharged for the purpose of minimizing their ERISA benefits under existing plans, as well as preventing future eligibility.

Allstate also moves to dismiss the §510 claim for failure to plead the required interference with plaintiffs' employment relationship. For their interference claim to survive, plaintiffs must allege an interference with their employment relationship, not just an interference with their benefits. McGath v. Auto-Body Northshore, Inc., 7 F.3d 665, 668 (7th Cir. 1993). Plaintiffs have overcome this hurdle by alleging that they were constructively discharged. Allstate asserts that this conclusory allegation is not supported by sufficient factual allegations and that as a result this claim fails. In support of this argument Allstate cites the Third Circuit's decision in Joyce v. RJR Nabisco Holdings Corp, 126 F.3d 166 (1997). We note, however that Joyce was decided under a summary judgment standard and specifically stated that they were not creating a bright line rule regarding ERISA claim requirements. *Id.* at 177. Here, plaintiffs have alleged that employment conditions were so onerous as to constitute constructive discharge. At this stage in the pleadings we take these allegations as true and will not dismiss the interference claim on this ground.

Allstate's final argument for dismissal of the ERISA violation allegations is that plaintiffs do not sufficiently allege class claims. We agree with plaintiffs, however, that dismissing these allegations at this stage in the proceedings is premature. We recognize that

we are required to determine if this case is to be maintained as a class action as soon as is practicable. Fed.R.Civ.P. 23(c)(1). We recognize, as well, that plaintiffs may be unable to proceed with class claims, but we believe the issue should be more fully developed before a ruling.

Count II

In count II, plaintiff law firms seek attorneys' fees under the "common fund" doctrine and under ERISA's fee-shifting provision. In their response to the present motion, however, plaintiff law firms have acknowledged that their fee-shifting claim is barred and have withdrawn that claim. What remains in count II is their common fund fee claim. Plaintiff law firms bring this claim under 29 U.S.C. 1132 (a)(3), which provides that a civil action may be brought "by a participant, beneficiary, or fiduciary...to obtain other appropriate equitable relief (i) to redress such violations [of plan provisions] or (ii) to enforce any provisions of this subchapter or the terms of the plan." Defendants move to dismiss this claim on multiple grounds.

We first address the question of jurisdiction. The Seventh Circuit has provided that "virtually every suit relating to an ERISA plan...can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of section 1331." Winstead v. J.C. Penney Co., Inc., 933 F.2d 576, 579 (7th Cir. 1991). In determining if this claim arises under federal law, a court can ask whether the requested relief requires the application of federal judge-made law. Northeast Department ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3rd Cir. 1985). If we must apply federal common law, then there is a federal question.

Plaintiff law firms assert that we have original jurisdiction over this claim because the common fund doctrine is part of federal common law. Under common fund principles, if a case results in the creation of a common fund for the benefit of the plaintiff class, then plaintiffs' attorneys may petition the court to recover the fees out of the fund. Florin v. Nationsband of Georgia, N.A., 34 F.3d 560, 563 (7th Cir. 1994). Common fund recovery in ERISA cases is an equitable remedy that exists separate from ERISA's specified fee-shifting provision. Cook v. Niedert, 142 F.3d 1004, 1014 (7th Cir. 1998).

Allstate contests a finding of jurisdiction, arguing that even if there is a federal question, a common fund claim must still relate to an underlying ERISA lawsuit. The Supreme Court has provided that federal courts have jurisdiction over common fund petitions that are independent proceedings supplemental to an original proceeding. Sprague v. Ticonic National Bank, 307 U.S. 161, 170 (1939). In order for us to have jurisdiction over an ERISA common fund claim, the claim must at a minimum relate to an ERISA plan. It is not clear, however, whether Sprague requires that every common fund petition be brought as supplement to an original ERISA lawsuit.

We find that the claim for attorneys' fees does not have a jurisdictional basis. The plaintiff law firms request that we find jurisdiction over a claim for fees that were accrued in a state lawsuit, filed under state law with no reference to ERISA rights or obligations, on behalf of plan participants who are not currently parties. The state complaint was eventually amended to include an ERISA claim to support a claim for attorneys' fees, but not until after the alleged fund was created.

Our decision is informed by cases which address the issue of whether attorneys' fees can

be granted for legal work performed during the administrative phase of ERISA benefits proceedings before the filing of a federal lawsuit. *See e.g.* Anderson v. Procter & Gamble Co., 220 F.3d 449, 456 (6th Cir. 2000); Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313 (9th Cir. 1993). Fees accrued in administrative proceedings concerning an ERISA-governed plan are not recoverable in a claim for attorneys' fees filed after the work was completed. *Id.* Even though these courts were addressing claims brought under ERISA's fee-shifting provision, we find the same reasoning applicable to the current case. The fees and costs sought by plaintiff law firms were accrued before the filing of this lawsuit in relation to a state action originally filed with no federal claim. Plaintiff law firms bring this request for fees under 29 U.S.C. 1132(a)(3) of ERISA and accordingly the fees should relate to an ERISA claim. We dismiss the claim in count II for lack of jurisdiction.[1]

## Count III

In count III plaintiff law firms bring a claim under state law for enforcement of liens against severance payments to the four clients retained in the prior state action cited above. Defendants move to dismiss this claim under the doctrine of *res judicata*. Under Illinois law, a final judgement in a prior action bars a claim where there are identity of the parties, subject matter and causes of action. Roding v. Peters, 92 F.3d 578 (7th Cir. 1996) *citing* Torcasso v. Standard Outdoor Sales, Inc., 157 Ill.2d 484, 626 N.E.2d 225, 228 (1993). Here we find identity of the parties and subject matter.

In applying *res judicata*, identity of the cause of action can be determined by asking whether the evidence needed to sustain the subsequent action would have sustained the original

---

[1] While we dismiss this claim for lack of jurisdiction, we note that there are also serious problems with *res judicata* and plaintiff law firms' catalyst theory of recovery.

action. *Id.* The doctrine of *res judicata* can extend to claims that were not brought but might have been brought in the prior action. *Id.* Illinois also allows a second approach to determining identity of cause of action. Under the transactional approach a claim is barred if it arose from the same transaction, incident or factual situation as the prior suit. Whitaker v. Ameritech Corporation, 129 F.3d 952, 956 (7th Cir. 1998) *citing* Rodgers v. St. Mary's Hosp., 149 Ill.2d 302, 597 N.E.2d 616, 621 (1992).

In the state action that preceded this case, plaintiff law firms brought a common fund claim seeking an award from the severance payments to the 119 new participants under the Agent Transition Severance Plan for acting as a catalyst for the inclusion of those participants in the ATSP. After a lengthy hearing, that claim was dismissed with prejudice. The state liens in count III are against the severance payments given to four of those 119 new participants and concerns the same legal work. We find that the prior state litigation precludes this claim. Count III is dismissed.

## CONCLUSION

For the reasons above, defendants' motion to dismiss is granted in part and denied in part. The claims in count I stand; the claims in counts II and III are dismissed.

JAMES B. MORAN
Senior Judge, U. S. District Court

Nov. 29, 2001.