Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1541 | **DATE** | 6/21/2004 |
| **CASE TITLE** | JAY R. FLANAGAN, et al vs. ALLSTATE INSURANCE COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

### MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiffs' motion for class certification is granted for their claim alleging violation of sec. 510 of ERISA and denied for their claim alleging breach of fiduciary duty. Certification of the subclass is denied. Status hearing is set for 8/24/04 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 2 2004 | 73 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | 15 | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | date mailed notice | |
| LG | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY R. FLANAGAN, JAMES W. CARSON )
JOHN M. CHANEY, and DONALD W. JONES, )
individually and on behalf of all others similarly )
situated, )
)
          Plaintiffs, )
)
vs. ) No. 01 C 1541
)
ALLSTATE INSURANCE COMPANY, an )
Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
)
          Defendants. )

JUN 2 2 2004

## MEMORANDUM OPINION AND ORDER

Four named plaintiffs, Jay Flanagan, James Carson, John Chaney and Donald Jones, remain in this class action against Allstate Insurance Company (Allstate) and the Agent Transition Severance Plan (severance plan) for violations of the Employee Retirement Income Security Act (ERISA). Plaintiffs were Allstate employee-agents who retired or became independent contractors for Allstate before the company altered its severance plan to provide more lucrative benefits for employees who left the company or changed their status. After the court's dismissal of two counts in the complaint, *see* Flanagan v. Allstate Insurance Company, 213 F.Supp.2d 862 (N.D.Ill. 2001), the named plaintiffs are left with two ERISA claims: 1) constructive discharge with the intent to interfere with the receipt of benefits, under both then-existing plans and a new plan being seriously considered, in violation of § 510, 29 U.S.C. § 1140, and 2) failure to disclose serious consideration of the plan in breach of Allstate's fiduciary duty. Plaintiffs now seek to certify a class to pursue these claims. Their motion for

73

class certification is granted in part and denied in part.

## BACKGROUND

The following facts are taken from plaintiffs' complaint. In 1998, Allstate, an insurance provider, planned the elimination of employee-agents in favor of independent contractors. Plaintiffs claim Allstate was motivated, in part, by a desire to avoid future contributions to employee ERISA plans. In an effort to achieve its goal, Allstate allegedly harassed its employee-agents -- asserting more control over them by requiring attendance at training sessions and mandatory meetings, and participation in a skills management program; extending their office hours; reducing or eliminating reimbursable office expenses; setting unrealistic sales quotas, threatening termination; creating make-work; and imposing burdensome reporting requirements. In October 1998, Allstate also informed employee-agents of increased service availability standards they had to meet. These standards included keeping the office open six days a week and staffing the office with a licensed representative during business hours. Further, Allstate informed its agents that managers would monitor compliance with the standards and that failure to maintain the standards could result in reprimand and/or termination.

Plaintiffs allege that these new requirements and standards were a successfully orchestrated campaign to drive out agents before Allstate announced a new severance package. Between December 1, 1998 and May 31, 1999, 176 agents quit and 1,106 agents became independent contractors. Two hundred and fifty-one additional agents converted to independent contractors between June 1, 1999 and November 30, 1999.

In November 1999, Allstate publicly unveiled its plan to use only independent

contractors as sales agents. In conjunction with the introduction of its new business model, Allstate announced the availability of bonuses and severance benefits for employee-agents who converted to independent contractors or retired. Allstate also offered to buy the books of business from those agents who wanted to leave the company. The company wrote the revised Agent Transition Severance Plan to provide these benefits only to agents who left their positions after November 30, 1999. After plaintiffs' attorneys filed a class action lawsuit in state court requesting benefits for employee-agents who retired or left prior to November 30, 1999, Allstate amended the severance plan to allow benefits to any employee-agents who left between June 1, 1999 and November 30, 1999, as well. Plaintiffs were all employee-agents who retired, quit or became independent contractors before June 1, 1999, and thus were ineligible for benefits. They allege that Allstate seriously considered the revised severance plan prior to June 1, 1999, but did not inform them of these new benefits before they left their positions – a breach of its fiduciary duty.

Plaintiffs seek to certify a class consisting of "Allstate employee-agents who, retired, terminated, or converted to independent contractor status between April 1, 1998 and November 30, 1999, who had not submitted notice of their retirement or resignation prior to April 1, 1998 and who have not been offered the opportunity to participate in the Agent Transition Severance Plan or were harassed to leave Allstate prior to June 30, 2000." Plaintiffs also seek to certify a subclass of "employee-agents who submitted a retirement or termination letter in substance reserving rights to future benefits to be offered in 1999."

## DISCUSSION

Courts employ a two-step process in deciding whether to certify a class. First, the

court analyzes whether the proposed class meets the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality and adequate representation. Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993). Then, it determines whether the action satisfies one of the subsections of Rule 23(b). Levin v. Kluever & Platt, LLC, 2003 WL 22757764 at *1 (N.D.Ill. 2003). For purposes of this motion the court accepts the allegations of the complaint as true, though it may probe the evidence, if necessary, to determine whether class certification is appropriate. *See* Retired Chicago Police Ass'n, 7 F.3d at 599. In deciding whether or not to certify a class, the court does not evaluate the merits of the underlying action.[1] Spencer v. Central States, Southeast and Southwest Areas Pension Fund, 778 F.Supp. 985, 989 (N.D.Ill. 1991).

### Federal Rule of Civil Procedure 23(a)

Failure to meet any one of the four requirements of Rule 23(a) defeats a bid for class certification. Allen v. Chicago Transit Authority, 2000 WL 1207408 at *5 (N.D.Ill. 2000). The rule provides that parties may sue as representatives of a class if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Seventh Circuit has stated that Rule 23 should be liberally interpreted and that, when using its broad discretion regarding the certification of a class, a court should err in favor of maintaining the class action. King v. Kansas City Southern Indus., 519 F.2d 20, 26 (7th Cir. 1975).

---

[1] Allstate asserts that there is no evidence to support the claim that it gave any, much less serious, consideration to a new plan prior to June 1, 1999, but it recognizes that is a merits issue.

## Numerosity

The numerosity requirement does not rest solely on the number of individuals who would constitute the proposed class. The central inquiry is the practicality of joining all the interested parties in a single suit. Arenson v. Whitehall Convalescent and Nursing Home, 164 F.R.D. 659, 663 (N.D.Ill. 1996). When determining whether joinder is impracticable, the court considers not only the size of the class, but also its geographic dispersion, the relief sought, and the ability of individuals to bring their own claims. *See* Barner v. City of Harvey, 1997 WL 139469 at *2 (N.D.Ill. 1997). While there is no threshold number required to prove numerosity, "permissive joinder is usually deemed impracticable where the class members number 40 or more." Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 307 (N.D.Ill. 1995) (citations omitted). In response to plaintiffs' interrogatories, defendants stated that between December 1, 1998 and May 31, 1999, 176 Allstate agents terminated their employment and 1,106 agents became independent contractors. The number of potential class members (which is even higher than 1,282, since the above figures only cover a portion of the time period for the proposed class) clearly suffices in order to establish numerosity.[2]

The other considerations also support a finding of numerosity. The named plaintiffs reside in Florida and Illinois, and, as Allstate operates nationally, class members likely live throughout the country. The injunctive and declaratory relief that plaintiffs seek also support a finding that the class is sufficiently numerous, for that relief would apply to all who can establish that they are members of the class. Furthermore, a class member's ability to pursue a claim individually may be curtailed due to the likely imbalance between the costs of litigation

---

[2] How many of those might be members of the class if plaintiffs prevail is another matter, which we will allude to later.

and the potential award. *See* Barner, 1997 WL 139469 at *3 (court considers economic infeasibility of fired employees bringing individual harassment actions against employer when deciding that the proposed class satisfies numerosity factor).

Commonality

Commonality requires a question of law or fact common to the whole class. Allen v. City of Chicago, 828 F. Supp. 543, 551 (N.D.Ill. 1993). Courts have described this requirement as a low hurdle to surmount, *see* Gaspar v. Linvatec Corp., 167 F.R.D. 51, 57 (N.D.Ill. 1996), because, generally, one common question suffices. Arenson, 164 F.R.D. at 663. As long as there is "a common nucleus of operative fact," factual differences among the class members' experiences does not preclude a finding of commonality. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); Allen, 828 F.Supp. at 541.

Plaintiffs argue that there are three common questions that unite all class members: 1) when did Allstate first seriously consider the payment of severance benefits granted in its severance plan; 2) whether Allstate's new employment conditions were meant to harass agents into retiring, quitting or converting to independent contractors, so that they would be ineligible for current ERISA benefits and future severance benefits under consideration; and 3) whether Allstate misrepresented or concealed the fact that severance payments were under serious consideration. Defendants argue that neither the harassment claim nor the breach of fiduciary duty claim establish a common question that satisfies the commonality requirement. Essentially, they argue that for both claims individualized inquiry and analysis is required, precluding class certification.

For the harassment claim, defendants maintain that each class member would need to

establish his work history, which varies from agent-to-agent, as evidenced by different contracts, managers and employment regions. In support of their argument, defendants rely on <u>Gorence v. Eagle Food Centers, Inc.</u>, 1994 WL 445149 (N.D. Ill. 1994), where the court denied class certification. In <u>Gorence</u>, the court found that the plaintiffs failed to meet the commonality requirement because, as in a prior case in the Northern District of Illinois, the plaintiffs "failed to allege a discriminatory policy or practice of general application, such as a biased testing procedure or a discriminatory pregnancy policy . . . ." *Id.* at *9. Conversely, in this case, plaintiffs establish a common question regarding their claim of Allstate's violation of § 510 of ERISA, because Allstate's alleged harassment was instituted through agency-wide directives applied to all employee-agents. The common question posed by the harassment claim transcends the class members' differences regarding office locations, managers and employment contracts. In <u>Hispanics United of DuPage County v. Village of Addison</u>, a case involving allegations of race-based housing discrimination, the court stated, "Where 'broad discriminatory policies and practices constitute the gravamen of a class suit, common questions of law or fact are necessarily presented.'" 160 F.R.D. 681, 688 (N.D.Ill. 1995) (quoting <u>Midwest Community Council v. Chicago Park Dist.</u>, 87 F.R.D. 457, 460 (N.D.Ill. 1980). The former Allstate agents' claims arise from defendant's alleged broad policies of harassment, assuring the presence of common questions.

Before determining whether plaintiffs' breach of fiduciary duty claim satisfies commonality, the court must determine what constitutes a breach. Defendants argue that a fiduciary must make an affirmative misrepresentation to a beneficiary to breach its fiduciary duty. Thus, proving a breach of duty would require that each class member show that he

asked an Allstate representative about the possibility of new benefits and was misled. Plaintiffs maintain that a fiduciary can breach its duty by failing to provide material information to its beneficiaries, regardless of whether the beneficiaries asked for the information. Thus, plaintiffs argue that class members need not evidence questions asked and responses given by Allstate representatives because Allstate had an obligation to volunteer information about the new benefits allegedly under serious consideration. Plaintiffs further assert that even if class members were required to inquire about the possible change in benefits, all class members made this inquiry during exit meetings at which they were told of their entitlement to benefits.

Fiduciaries of a pension plan breach their duty "if they mislead plan participants or misrepresent the terms or administration of a plan." Anweiler v. American Electric Power Service Corporation, 3 F.3d 986, 991 (7th Cir. 1993); see Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 590 (7th Cir. 2000). A fiduciary's misrepresentation regarding proposed benefits is material and therefore actionable if an employer is seriously considering the new benefits. Adamcyzk v. Lever Bros. Co., 33 F.Supp.2d 679, 688 (N.D.Ill. 1998); Gesell v. Commonwealth Edison Co., 216 F.R.D. 616, 622 (C.D.Ill. 2003). The Seventh Circuit has held that a fiduciary's failure to disclose information can constitute a misrepresentation. See e.g., Anweiler, 3 F.3d at 991. However, this does not mean, as plaintiffs argue, that fiduciaries are required to volunteer information. Rather, a fiduciary's omission is a breach when it fails to provide complete information in response to a beneficiary's question, or fails to correct misinformation it previously provided. See Adamczyk, 33 F.Supp.2d at 688; Neuma, Inc. v. E.I. DuPone de Nemours and Co., 133 F.Supp.2d 1082 (N.D.Ill. 2001). Several circuit courts agree that

fiduciaries must answer truthfully, if asked about future benefits that are under serious consideration, but they do not have a duty to volunteer information concerning the benefits. *See e.g.*, Bins v. Exxon Co. U.S.A., 220 F.3d 1042, 1053 (9th Cir. 2000)("[A]n ERISA fiduciary does not have an affirmative duty prior to final approval and general dissemination of plan changes to volunteer information to employees who have not specifically alerted the fiduciary to the fact that such information is material to them."); McAuley v. International Business Machines Corp., Inc., 165 F.3d 1038, 1043 (6th Cir. 1999); Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488, 1500 (10th Cir. 1995)(reversing the district court's dismissal of plaintiffs' breach of fiduciary duty claim to the extent the claim arose from affirmative misrepresentations concerning a benefit plan under serious consideration and affirming the dismissal to the extent the claim arose from defendant's failure to disclose information).

Plaintiffs rely on two cases for the proposition that a fiduciary's omission of information regarding serious consideration of a new benefit plan is a breach of duty: Adamcyzk v. Lever Brothers Co.,Div. of Conopco, 991 F.Supp. 931, 933, 939 (N.D.Ill. 1997) and Mullins v. Pfizer, Inc., 147 F.Supp.2d 95, 108 (D.Conn. 2001). Neither case establishes that a fiduciary must proffer this information. Rather, they hold that a fiduciary may not answer a beneficiary's inquiry with lies, half-truths or misleading silence. Adamcyzk, 991 F.Supp. at 940 ("While a fiduciary may not be required to volunteer information, . . . he or she must give complete and accurate information in response to participants' questions."); Mullins, 147 F.Supp.2d at 107 ("While a fiduciary is not required 'to be perfectly prescient as to all future changes in employee benefits' or to 'disclose its internal deliberation,' . . . 'when a plan administrator speaks, it must speak truthfully.'").

Given that plaintiffs' breach of fiduciary duty claim requires more than just Allstate's failure to volunteer information, we must determine whether plaintiffs have established commonality. Plaintiffs argue that even if Allstate's fiduciary duty did not require it to volunteer information regarding its new benefits plan, commonality still exists among the proposed class members. They maintain that each class member spoke with an Allstate representative about his benefits prior to his departure from the company and was mislead by an affirmative misrepresentation or silence. While recognizing that individual determinations would need to be made, plaintiffs argue that common questions apply to each class members' claim, such as when Allstate began to seriously consider the new benefits, whether it concealed this information from its exiting employees or the company representatives meeting with these employees, and whether this information was material.

Despite the presence of questions that are arguably common to the class, courts have repeatedly denied class certification for breach of fiduciary duty claims arising from oral statements made at different times to different class members. *See* Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457 (11th Cir. 1996); Gesell v. Commonwealth Edison Co., 216 F.R.D. 616, 622 (C.D.Ill. 2003); In re Sears Retiree Group Life Ins. Litigation, 198 F.R.D. 487, 490 (N.D.Ill. 2000). In Hudson, the Eleventh Circuit affirmed a denial of class certification on the grounds of lack of commonality where the claim revolved around reliance on oral representations regarding better benefits for retirees. 90 F.3d at 453. The court held that plaintiffs failed to establish commonality where they needed to show that each class member received a uniform message through various oral representations, and that each class member would have deferred their retirement in the hope of receiving the future benefits. *Id.* Since these two

"highly individualized" showings were necessary for each potential class member's claim, a finding of commonality was precluded. *Id.* at 457.

In Gesell, plaintiffs sought to certify a class of former Commonwealth Edison employees who were ineligible for enhanced benefits after they left the company in reliance on statements made by company officials that no better incentives would be available to them if they remained. 216 F.R.D. at 622. The court explained that the commonality requirement was not met because the proposed class members did not hear the same statements at the same meeting. *Id.* The court reasoned that variations in the statements could have conveyed different meanings and had a different impact on individual employees. *Id.* Likewise, this court previously held in In re Sears Retiree Group Life Ins. Litigation that a motion for class certification of a breach of fiduciary duty claim failed to satisfy the test of commonality and typicality where "different employees received a different set of communications." 198 F.R.D. at 489-90.

As in those cases, plaintiffs' breach of fiduciary duty claim against Allstate fails to satisfy the commonality requirement. To determine whether a breach of fiduciary duty occurred, the trier of fact would need to know both what was said during each agent's conversation with an Allstate representative before his departure or conversion to independent contractor, and what affect this information had on the agent's decision to leave or convert. These individualized inquiries preclude a finding of commonality for all Allstate employee-agents who retired or converted during the relevant time period. As explained in Sprague v. General Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998), a claim that depends on each individual's interactions with the defendant is not suitable for a class action because "[a]

named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." Given that the breach of fiduciary duty claim fails to satisfy the commonality requirement, our analysis continues only as to the harassment claim.

## Typicality

Courts have noted an overlap between the analysis of commonality and typicality. *See e.g.*, Toney v. Rosewood Care Center, Inc. of Joliet, 1999 WL 199249 at *8 (N.D.Ill. 1999). To determine whether the typicality requirement is satisfied, the court looks to whether the representative plaintiffs' claims have the same characteristics as the claims of the proposed class. Guillory v. American Tobacco Co., 2001 WL 290603 (N.D.Ill. 2001). As the Seventh Circuit has stated, "'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)(quoting H. Newberg, *Class Actions* § 1115(b) at 185 (1977)). Typicality does not require that all class members' claims be identical and, as with commonality, factual distinctions between the claims of the named plaintiffs and those of other class members will not defeat a finding of typicality. *Id.*; *See* Clarke v. Ford Motor Co., 220 F.R.D. 568, 579 (E.D. Wis. 2004).

Defendants argue that the named plaintiffs' claims of harassment are widely divergent and therefore not typical for the whole class. They highlight differences between the four named plaintiffs' experiences prior to leaving Allstate or converting to independent contractor status. Defendants allege that Flanagan's primary complaint was an unresponsive manager who refused to allow him to share office space. They contrast Carson's statement that no one

forced him to comply with the new standards implemented in 1998 with Chaney's allegation that his sales manager pushed him into retirement. Finally, defendants maintain that Jones decided to become an independent contractor because employee-agents now had to attend too many meetings.

Though plaintiffs emphasize different aspects of their decision to leave Allstate or convert to independent contractor status in their depositions, they all state that the new uniform standards instituted by Allstate provoked their decision. Unable to hire support or share an office with another agent, Flanagan stated that he did not see how he could comply with the new office hour requirements. Carson asserted that the new requirements were part of an effort to pressure agents to retire early. Jones found the new requirements to be "overbearing" and "harassing," and they eventually forced him to retire, a move he describes as "constructive discharge." While Chaney highlighted his manager's harassment, his manager was enforcing new work rules: longer office hours and higher production figures. Chaney asserts that his treatment was typical for employee-agents under the new climate at Allstate. Thus, even though the named plaintiffs' individual experiences may have differed, each of their claims for violation of § 510 of ERISA stems from Allstate's new rules and regulations.

## Adequacy of Representation

To determine whether there is adequacy of representation, the court must inquire as to both the adequacy of the named plaintiffs' counsel and the adequacy of the named plaintiffs to protect the distinct interests of the absentee class members. Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986). Plaintiffs' counsel have had a principal role

in handling class actions and defendants do not challenge their adequacy in litigating this case. Defendants do challenge the named plaintiffs' adequacy to represent the interests of the class.

To adequately represent a class, named plaintiffs must not have conflicting interests with members of the class and they must "vigorously pursue litigation on behalf of the class." Shields v. Local 705, International Brotherhood of Teamsters, 1996 WL 616548 at *5 (N.D.Ill. 1996); Fitzsimmons, 805 F.2d at 697. Defendants maintain named plaintiff, James Carson, is an inadequate representative because he has disavowed that he was harassed into retirement or that he was misled about possible retirement benefits, both of which are key allegations of the complaint.

For the reasons explained above, the court is only concerned with Carson's adequacy to represent the class in its claim for breach of § 510 of ERISA. Just as commonality and typicality overlap, so too does typicality and adequacy. If Carson's claims are typical of the class, then he likely has sufficient interest in the outcome to ensure vigorous advocacy. *See* Whitten v. ARS Nat. Services, Inc., 2001 WL 1143238 at *4 (N.D.Ill. 2001). "The court should assure itself that plaintiff has '*some* commitment to the case, so that the "representative" . . . is not a fictive concept.'" *Id.* (quoting Rand v. Monsanto Co., 926 F.2d 596, 599 (7th Cir. 1991). Despite defendants' contentions, Carson's deposition testimony does reveal a commitment to the claims of the case. When asked if Allstate did anything that forced him to retire prematurely, Carson answered, "Well, yes . . . the longer hours, the Saturdays, the 6:00 o'clock issue. So I'd say yes." Carson surmised that perhaps these new national policies, which caused him to start contemplating retirement, were "silent innuendo" to pressure agents to retire so that the company could avoid the expense of a buyout. As evidenced by his testimony,

Carson understands the nature of the class action suit and his role in it, making him an adequate representative.

Rule 23(b)

As plaintiffs have met Rule 23(a)'s requirements for class certification, we now turn to the second step of our analysis, Rule 23(b). Plaintiffs seek certification under Rule 23(b)(2) or, alternatively, under Rule 23(b)(3). Rule 23(b)(2) states:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition...
>
> 2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . .

An action may be certified under this rule when injunctive or declarative relief is sought. Plaintiffs argue that their requested relief, inclusion in the Agent Transition Severance Plan, and treatment as if they were Allstate employees until June 30, 2000, for purposes of other benefit plans, is injunctive and declaratory relief and, thus, this action qualifies for certification under this rule. Defendants contest plaintiffs' characterization of their requested relief as injunctive or declaratory. They maintain that plaintiffs' action is primarily for money damages. Defendants allege that in deposition testimony both Carson and Chaney state they are seeking a monetary buyout for their books of business, and that Jones seeks payments under the severance plan, but not a declaration revoking his termination.

Plaintiffs' deposition statements do not reveal that their requested relief is non-injunctive or non-declaratory. When directly asked during his deposition what relief he was seeking in his complaint, Chaney stated, "I want to be put in the position that I would have been in had that contract been available to me or the new program had been made available

to me." He wants to be eligible for the benefits that were offered to those who retired after June 1, 1999. Carson and Chaney mention selling their books of business, which was an option given to those who retired at a later date. Jones' statement supports plaintiffs' argument that they are seeking declaratory relief because it affirms that he is seeking to be declared eligible to receive payment under the severance plan. Jones' disinterest in receiving a declaration rescinding his termination does not prove that plaintiffs' requested relief is something other than injunctive or declaratory.

A declaration that plaintiffs are eligible to participate in the severance plan is certainly a prelude to a request for monetary damages. However, it does not render the relief any less declaratory. *See* Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755, 763 (7th Cir. 2003). As the Seventh Circuit has stated, "[A] declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief." *Id.* In Berger, plan participants sued a benefit plan and its administrator for under-compensating them. The court held that the class action was properly certified under Rule 23(b)(2), despite defendant's claim that plaintiffs' relief was essentially the monetary difference between the amount they were paid and the amount they should have been paid. *Id.* The court explained that as long as the ensuing monetary relief is the direct consequence of the declaratory relief, and not unrelated to it, then a class can be certified under this rule. *Id.* at 764. As in Berger, monetary relief that plaintiffs could receive would result from the declaratory relief they seek, thus certification pursuant to Rule 23(b)(2) is proper.

We are left with a few final issues. As indicated in our discussion of numerosity, not all employee-agents who left Allstate or converted to independent contractors between April

1, 1998, and June 30, 2000, are eligible class members. The complaint alleges company-wide enforcement of rules and regulations intended to harass employee-agents so that they would leave, allowing Allstate to avoid paying them employee benefits. These allegations are sufficient to state a claim under § 510 of ERISA and to certify it as a class action. However, all employee-agents who left Allstate during this period do not automatically become eligible class members. Some employees who left Allstate may have given no consideration to the new policies, and some who endured the alleged harassment may have left even in the absence of these actions. Individual hearings will need to be held to determine whether potential class members are actual class members – former employee-agents who left Allstate or converted to independent contractor status between April 1, 1998 and June 30, 2000, *as a result of* defendant's alleged harassment. *See e.g.*, Romasanta v. United Air Lines, Inc., 717 F.2d 1140 (7th Cir. 1983)(individual hearings held to determine whether 1,750 potential class members were actual class members, former female flight attendants who resigned or were fired because of defendant's policy banning married female flight attendants). We leave to another day the appropriate means of making such individualized determinations, should plaintiffs prevail on the common questions.

Plaintiffs' proposed class includes employees who were harassed into retirement prior to June 30, 2000, after which Allstate no longer had employee-agents. For now, we will certify the class to include employees who were harassed to leave between June 1, 1999 and June 29, 2000, even though all employees who left June 1, 1999, and later, were eligible for the Agent Transition Severance Plan. Plaintiffs define the class to include these former employees due to their claim that these individuals lost out on their existing benefits. However, for employee-agents who departed after June 1, 1999, to show membership in the class despite their

eligibility for benefits under the Agent Transition Severance Plan, they need to establish that they would have opted to keep their positions even after the new severance plan was offered to them. Among this group of potential class members there will be a further distinction between those who left between June 1, 1999 and November 30, 1999, and those who left after November 30, 1999, since the new severance benefits were initially only offered to the latter group.

Finally, we deny certification for the subclass of former Allstate agents who submitted letters reserving a right to benefits offered in 1999. Plaintiffs declined to provide any argument that the subclass satisfies the requirements of class certification. Our analysis begins and ends with the numerosity requirement. Plaintiffs did not show that anyone other than James Carson and former agent John Hilgenberg wrote letters informing Allstate that they reserved a right to rescind their decision to retire and to receive new separation benefits offered in 1999. We have no reason to believe that those who submitted such a letter number close to forty former agents, nor that it would be impracticable to join them into a single suit.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted for their claim alleging violation of § 510 of ERISA and denied for their claim alleging breach of fiduciary duty. Certification of the subclass is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 21, 2004.