# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1541 | **DATE** | 11/10/2004 |
| **CASE TITLE** | JAY F. FLANAGAN, et al vs. ALLSTATE INSURANCE COMPANY, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendants' motion to reconsider is granted in part and denied in part. Plaintiffs will be allowed the opportunity to amend the class definition to eliminate any concern regarding a fail-safe class and to limit the class period to April 1, 1998, through May 31, 1999. Status hearing is set for December 9, 2004 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | NOV 1 2 2004 | |
| | Notified counsel by telephone. | | | date docketed | 84 |
| ✓ | Docketing to mail notices. | | | 15 | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| LG | courtroom deputy's initials | | 2004 NOV 10 PH 5: 19 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

JAY F. FLANAGAN, JAMES W. )
CARSON, JOHN M. CHANEY, and )
DONALD W. JONES, individually and )
on behalf of all others similarly situated, )
et al., )
                                      )
         Plaintiffs, )
                                        )
        vs. )         No. 01 C 1541
                                        )
ALLSTATE INSURANCE COMPANY, )
an Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
                                        )
        Defendants. )

**DOCKETED**

**NOV 1 2 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jay Flanagan, James Carson, John Chaney and Donald Jones brought this class action suit against defendants Allstate Insurance Company (Allstate) and its Agent Transition Severance Plan (Plan), for violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* After a motion to dismiss, the plaintiffs had two remaining claims: constructive discharge with the intent to interfere with the receipt of benefits in violation of § 510 of ERISA, 29 U.S.C. § 1140, and failure to disclose serious consideration of improved benefits in breach of Allstate's fiduciary duty. On plaintiffs' motion we certified a class as to the constructive discharge claim, but found that plaintiffs failed to satisfy the commonality requirement for class certification as to the breach of fiduciary duty claim.[1] Defendants now move the court to reconsider its decision granting class

---

[1] For a more complete discussion of the case background, *see* Flanagan v. Allstate Insurance Co., 213 F.Supp.2d 862 (ND Ill. 2001) or Flanagan v. Allstate Insurance Co., 223 F.R.D. 489 (ND Ill. 2004).

certification.  The motion is granted in part and denied in part.

A party can bring a motion for reconsideration to correct errors of law or fact, or present newly discovered evidence.  *See* Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d 524, 529 (7th Cir. 2000)(citing LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263 (7th Cir. 1995)).  "A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."  Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191(7th Cir. 1990).  Motions for reconsideration should not serve to introduce new legal theories for the first time.  Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985); Pickett v. Prince, 5 F.Supp.2d 595, 597 (N.D.Ill. 1998). Nonetheless, due to the ongoing duty to ensure that the requirements for class certification are met throughout the entire case, courts have analyzed new arguments presented in motions to reconsider class certifications.  *See e.g.*, Belbis v. County of Cook, 2003 WL 187407 at *1 (N.D.Ill. 2003); *see also* Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 896 (7th Cir. 1981)("If the certification of the class is later deemed to be improvident, the court may decertify.").

Defendants argue that class certification was improper, or at least that the definition of the class is overly inclusive.  Defendants provide several reasons why the court erred in granting certification – it shifted the burden of proof to defendants; did not ensure the requirements of both Rule 23(a) and 23(b)(2) were satisfied; and certified a vague, fail-safe class.  We will address each of these contentions in turn.

Defendants argue that the court did not apply the proper standard for class

certification. They maintain that the court impermissibly shifted the burden of proof for class certification from plaintiffs to defendants. A review of our analysis reveals that this is not the case, though our articulation of the applicable standard could have been clearer. Defendants' concern stems, in part, from our statement that "[f]or purposes of this motion the court accepts the allegations of the complaint as true, though it may probe the evidence, if necessary, to determine whether class certification is appropriate" (Mem. Opinion and Order, 6/21/04 (Opinion) at 4). Defendants argue that courts are not to accept plaintiffs' allegations as true when determining whether to certify class actions, but rather are to employ a "rigorous analysis" to ensure that the requirements for certification are met. *See* Davis v. Hutchins, 321 F.3d 641, 649 (7th Cir. 2003)(quoting Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974)). In fact, we acknowledged the need to "probe the evidence" when considering whether class certification is appropriate, and, throughout our analysis of plaintiffs' motion, we did not merely accept plaintiffs' assertions regarding certification as true, but rather discussed evidence, including various parties' deposition testimony. As we explained in the followup sentence ("In deciding whether or not to certify a class, the court does not evaluate the merits of the underlying action."), the allegations that the court accepts as true, for the time being, relate to the merits of the plaintiffs' claims against defendants (Opinion at 4). Judge Castillo articulated this same standard in McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 576 (N.D.Ill. 2004), stating: "When evaluating a motion for class certification, the court accepts as true the moving party's allegations and does not examine the merits of the case." *Citing* Hardin v. Harshbarger, 814 F.Supp. 703, 706 (N.D.Ill. 1993). Though the Allstate defendants argue that the court employed the wrong standard when deciding the motion for class certification, the court used the same standard described in Szabo v. Bridgeport Machines, Inc., 249 F.3d

672, 677 (7th Cir. 2001), in which the Seventh Circuit stated that "sometimes it may be necessary for the court to probe beyond the pleadings before coming to rest on the certification question ... actual, not presumed, conformance with Rule 23(a) remains ... indispensable." Our decision acknowledged this standard and distinguished it from an inquiry into the merits of plaintiffs' claims.

Defendants also take issue with the court's statement that "Rule 23 should be liberally interpreted and ... when using its broad discretion regarding the certification of a class, a court should err in favor of maintaining the class action." Courts have repeatedly acknowledged their discretion in certifying class actions and noted that they should err in favor of granting certification. *See e.g.*, King v. Kansas City Southern Industries, Inc., 519 F.2d 20, 26 (7th Cir. 1975); Wallace v. Chicago Housing Authority, 2004 WL 2339332 at *2 (N.D.Ill. 2004). This language appears verbatim in a case cited by defendants. *See* Guillory v. American Tobacco Co., 2001 WL 290603 at *2 (N.D.Ill. 2001)("The court maintains broad discretion to determine whether a proposed class satisfies the requirements and should err in favor of maintaining class actions."). Erring in favor of class actions is not equivalent to relieving plaintiffs of their burden to show that the requirements for certification are satisfied.

In our decision to certify the plaintiff class, we considered and rejected many of defendants' arguments regarding plaintiffs' failure to show that the requirements for class certification were satisfied. For the most part, we will not address these arguments again. However, defendants raise some new arguments and place renewed emphasis on old arguments that will be analyzed. Defendants contend that plaintiffs have not satisfied the requirements of Federal Rule of Civil Procedure 23(b)(2), which allows for a class action "where the party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...." A class action, in which plaintiffs predominantly seek money damages, should not be maintained under Rule 23(b)(2). Lemon v. International Union of Operating Engineers, Local No. 139, 216 F.3d 577, 580 (7th Cir. 2000). In Lemon, the plaintiffs sought monetary damages as well as injunctive relief. The court explained that a suit for money damages undermines the cohesion necessary in a Rule 23(b)(2) class action, where the plaintiffs are bound to litigation seeking redress for a common injury. *Id.* However, an exception exists to the general rule prohibiting Rule 23(b)(2) class certification for actions seeking monetary damages. Non-equitable monetary relief may be obtained in a Rule 23(b)(2) class action when the monetary damages are "'incidental' to the requested injunctive or declaratory relief." *Id.* at 581. The Seventh Circuit defined "incidental" damages as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 425 (5th Cir. 1998)). The Third Circuit has elaborated: "Consistent with this analysis, whether damages are incidental depends on: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by 'objective standards' and not standards reliant upon 'the intangible, subjective differences of each class member's circumstances'; and (3) whether such damages would require additional hearings to determine." Barabin v. Aramark Corp., 2003 U.S. App. LEXIS 3532 at *5 (3d Cir. 2003).

The damages that plaintiffs seek are incidental damages. The monetary damages flow directly from Allstate's alleged liability for harassing plaintiffs to leave the company or convert to independent contractors, which is the basis for plaintiffs' request to be declared eligible for

the Plan. Upon a finding of liability, class members would be entitled to monetary damages, which would not require additional hearings to calculate but would be determined using Allstate's objective standards for disbursement of Plan benefits.

Defendants reassert that the predominance of individual issues renders class treatment of this action both inefficient and unmanageable. This argument echoes their concerns that the class is too vague. They claim that individual determinations will need to be made on "causation, the fact of harassment, the causal nexus between the fact of harassment and the decision to leave, and the causal nexus between the decision to leave and any alleged injury." Despite defendants' assessment, the individualized inquiry can be more simply stated – each putative class member will need to show that but for defendants alleged harassment he would have remained an employee-agent. *See* <u>McLendon v. Continental Can Co.</u>, 908 F.2d 1171, 1178 (3d Cir. 1990)(discussing individual class members' requirement to prove but for causation in class action suit for violation of § 510 of ERISA in order to receive monetary award for lost pension rights). Regardless, defendants contend that where individualized inquiries are necessary, class certification is improper.

In our prior opinion we cited precedent for such inquiries in class action suits. *See* <u>Romasanta v. United Air Lines, Inc.</u>, 717 F.2d 1140 (7th Cir. 1983). Defendants attempt to distinguish the individualized inquiries that were conducted in <u>Romasanta</u> and <u>McDonald v. United Air Lines, Inc.</u>, 587 F.2d 357, 360 n.4 (7th Cir. 1978), from the inquiries needed in this case. Their argument is unconvincing. In the airline cases the court certified a class action for female flight attendants who lost their jobs as a result of United Air Lines' ban on married flight attendants. This class included not just married women who were terminated by the airline, but also women who resigned because of the policy. Defendants argue that even

though individual inquiries were required in those cases, they were a simple exercise requiring a determination of whether or not the flight attendant was engaged to be married or subsequently married. The investigative hearings conducted in McDonald belie that assessment. McDonald v. United Air Lines, 745 F.2d 1081 (7th Cir. 1984). The court laid out a number of principles to be considered when determining flight attendants' entitlement to relief. *Id.* at 1084. An impending marriage alone would not have qualified a flight attendant for the class, as some flight attendants would have left their positions regardless of United's policy. Nor would a flight attendant's failure to complain about the policy have automatically disqualified her from the class. The inquiry into whether former Allstate employees left because of the company's alleged harassment would not be significantly different from the inquiry into whether a flight attendant left her job because of United Air Line's illegal policy.

Nonetheless, defendants have another concern about the certified class, which must be addressed. Defendants contend that the class, as defined, is fail-safe – "a class which would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment," Dafforn v. Rousseau Associates, Inc., 1976 WL 1358 at *1 (N.D.Ind. 1976). In Dafforn, the court refused to certify a class of homeowners who had been charged "illegal" brokerage fees because the class definition depended on a finding that the defendants' fees were illegal. *Id.* As the court explained, if the trier of fact determined that the defendants' fees were not illegal, there would be no class members against whom *res judicata* would apply, allowing homeowners to bring individual suits to retry the same issues. *Id.* The Allstate defendants argue that the certified class of Allstate employee-agents, harassed to leave the company or convert to independent contractors, suffers the same defect as the proposed class in Dafforn. They maintain that if a ruling on liability determines that Allstate's policies do not constitute

harassment, no former employee-agents would fall under the class definition and, therefore, no one other than the named plaintiffs would be impeded from re-litigating the same action.

We recognize that a certified class should not be able to engage in risk-free litigation by eluding *res judicata*. The Seventh Circuit has acknowledged the need for a definite class to avoid such a problem, stating that "[s]ince the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class." Alliance to End Repression v. Rochford, 565 F.2d 975, 977 n.6 (7th Cir. 1977). In Rochford, the Seventh Circuit, affirmed the certification of a class defined as Chicago residents who engaged in lawful political, religious, educational or social activities, and, as a result, were subjected to coercion, punishment or harassment by the defendants. *Id.* at 976. The court noted that class membership based on prospective members' state of mind is indefinite, but that class membership based on the defendant's conduct is not indefinite. *Id.* at 978; *see also* Hispanics United of DuPage County v. Village of Addison, Illinois, 160 F.R.D. 681, 686 (N.D.Ill. 1995). Thus, a class of "individuals and organizations operating in Chicago that have been subjected to the alleged pattern of unconstitutional harassment by the defendants" is certifiable. Rochford, 565 F.2d at 978. Of course, this class could also have been labeled a fail-safe class under Dafforn, since it consisted of those who had been subjected to unconstitutional harassment. However, the Seventh Circuit did not view the Rochford class as a fail-safe class, perhaps because it was confident that the district courts would not allow unnamed class members to play semantic games with judicial doctrine such as *res judicata*. Like the Seventh Circuit in Rochford, we are not concerned that the courts would allow the unnamed Allstate class members to avoid *res judicata*. Were the defendants to prevail on the common issues of liability, the court would have to enforce *res judicata* in the

event an unnamed class member who could have benefitted from a favorable decision attempted to re-litigate the same issue. The current class definition is definite enough for the court to make such a determination.

Nonetheless, any concern about a fail-safe class can be wholly eliminated by slightly revising the class definition. The court has wide latitude to resolve any ambiguity in a class definition by redefining it or providing plaintiffs with the opportunity to redefine it. *See* Metropolitan Area Housing Alliance v. U.S. Dept. of Housing and Urban Development, 69 F.R.D. 633, 638 n.7 (N.D.Ill. 1976). By replacing the word "harassed" with a description of defendants' allegedly offending policies, plaintiffs avoid the allegation that their class definition rests on a finding of liability. We will allow plaintiffs the opportunity to revise their class definition in light of our prior denial of class certification for their breach of fiduciary duty claim, concern about a fail-safe class, and our limitation of the class period, discussed below.

Defendants maintain that even if certification of the class was not improper, the class period certified is overly inclusive due to both its commencement date and closing date. Upon reconsideration, we agree that the class period should not extend until June 30, 2000, but, for the time being, do not disturb the April 1, 1998, start date.

Recognizing that employees who left Allstate or converted to independent contractors on or after June 1, 1999, were eligible to participate in the Agent Transition Severance Plan, we still certified the class to include them, as we said, "[f]or now." As we explained, even though these employees had the option to participate in the Plan, and thus harassment did not preclude them from this benefit, it may have precluded them from receiving their other plan benefits. This appeared to be a special risk for those former employee-agents who left Allstate

during the "look back" period between June 1, 1999, and November 30, 1999, since they were offered the opportunity to participate in the Plan after they left Allstate and, therefore, their decision to quit or transition would not have been influenced by the Plan.

Defendants have pointed out two facts, which reveal the untenability of including those who left on and after June 1, 1999, in the class. First, on November 10, 1999, all employee agents were put on notice that Allstate was terminating their contracts, effective no later than June 30, 2000 (Defs' Ex. 1, Barry Hutton Dep. at 61-62; Defs' Ex. 8, Preparing for the Future Booklet ["Your agent agreement and employment will terminate no later than June 30, 2000"]). As part of Allstate's Preparing for the Future Group Reorganization Program, these employees could participate in the Plan and had several post-termination options. As a prerequisite to receiving benefits under the Plan, the agents needed to sign a release for Allstate. All but nineteen agents signed the release and accepted some form of benefits under the plan. *See* Romero v. Allstate Insurance Co., 2004 WL 692231 at *2 (E.D.Pa. 2004)(certifying a class of former employee-agents who signed the release and who now seek to rescind it, and certifying a class of the sixteen former agents who did not sign the release). Second, all but five of the employees who left between June 1, 1999, and November 30, 1999, and were not originally eligible to participate in the Plan, eventually accepted benefits and signed a release of any claims against Allstate (Defs' Ex. 18, Scott Proctor's Declaration).

The named plaintiffs did not sign the release and accept benefits under the Plan, nor did  they refuse to sign the release. They all left Allstate or converted to independent contractors before Allstate offered the option to release any claims and participate in the Agent Transition Severance Plan. The named plaintiffs are not the proper representatives for those who left on or after June 1, 1999, especially since the Romero action would apply to those

individuals' claims.

The class period will still commence on April 1, 1998. Defendants maintain that the work rules central to plaintiffs' complaint were not announced until the fall of 1998, and were not implemented until January 1, 1999. Therefore, the alleged harassment could not have occurred prior to New Year's Day 1999. Defendants dismiss the "handful of documents" which plaintiffs argue create a question as to when the alleged harassment began. These documents include a Field Communication Package announcing Allstate's effort to make it easier for employee-agents to convert to independent contractors, and announcing greater control over how employee-agents operate – their expenses and their training. While plaintiffs may not ultimately be able to prove that Allstate's alleged harassment began this early, or at all, common issues of law and fact apply throughout the class period, "which is all that is required at this stage of the proceedings." In re Bromine Antitrust Litigation, 203 F.R.D. 403, 414 (S.D.Ind. 2001); see Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (C.A.N.Y. 1982)("[I]t would be improper for a district court to resolve substantial questions of fact going to the merits when deciding the scope or time limits of the class").

## CONCLUSION

For the foregoing reasons defendants' motion to reconsider is granted in part and denied in part. Plaintiffs will be allowed the opportunity to amend the class definition to eliminate any concern regarding a fail-safe class and to limit the class period to April 1, 1998, through May 31, 1999.

James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

_____Nov. 10_____, 2004.