IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY F. FLANAGAN, JAMES W. )
CARSON, JOHN M. CHANEY, and )
DONALD W. JONES, individually and )
on behalf of all others similarly situated, )
et al., )
        )
     Plaintiffs, )
        )
     vs. )   No. 01 C 1541
        )
ALLSTATE INSURANCE COMPANY, )
an Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
        )
     Defendants. )

## MEMORANDUM OPINION AND ORDER

After granting class certification for plaintiffs' section 510 ERISA claim against defendants, Allstate Insurance Company and its Agent Transition Severance Plan (collectively Allstate), see Flanagan v. Allstate Insurance Co., 223 F.R.D. 489 (N.D.Ill. 2004), the court granted in part and denied in part defendants' motion to reconsider, Flanagan v. Allstate Insurance Co., 225 F.R.D. 569 (N.D.Ill. 2004). We ordered plaintiffs to revise their class definition to address defendants' concern about a fail-safe class. *Id.* at 573-74. In response to our memorandum order and opinion, plaintiffs proposed an amended class definition on December 8, 2004, reading as follows:

> Allstate employee-agents who retired, terminated, or converted to independent contractor status between April 1, 1998 and May 31, 1999, who had not submitted notice of their retirement or resignation prior to April 1, 1998 and who retired, terminated or converted due to Defendants' changes in work rules including increased service availability standards which required keeping agency offices open six days per week and having a licensed property and casualty representative in the office during all hours of operation and extended

office hours; reduction or freezing of the amount of employee-agents' reimbursable office expenses; unrealistic expectations and quotas as to contacts and sales; burdensome and unnecessary reporting requirements; and required attendance at meetings and training sessions of little or no utility.

Defendants subsequently filed an opposition to this amended definition or, in the alternative, a motion to strike, arguing that it suffered from the same deficiencies as the original definition. According to defendants, under the new definition class membership was still contingent on defendants' liability – instead of class members being former employees who were "harassed" by defendants, they were now former employees subjected to "burdensome and unnecessary" and "unrealistic" policies and meetings with "little or no utility." Defendants argued that given this definition, the class was still fail-safe and did not allow potential class members nor Allstate to identify actual members.

Plaintiffs responded by proposing a new amended definition:

> Allstate employee-agents who retired, terminated, or converted to independent contractor status between April 1, 1998 and May 31, 1999, who had not submitted notice of their retirement or resignation prior to April 1, 1998 and who retired, terminated or converted due to Defendants' changes in work rules set forth in the "Allstate Agency Standards" of September 1998 or subsequent versions of the "Allstate Agency Standards."

Defendants acknowledge that this definition addresses some of its concerns, but maintain that neither putative class members nor counsel, nor the court, can easily ascertain class membership under this definition. They contend that since class membership hinges on whether employee-agents retired, terminated or converted *due to* changes in agency standards, membership cannot be determined until after an individual inquiry into each agent's employment decision.

In our memorandum order and opinion granting class certification, we recognized that some Allstate employees may have retired, terminated, or converted to independent

contractors during the period in question, regardless of the company's new policies. Flanagan, 223 F.R.D. at 498. For this reason we found that not all employee-agents who left would "automatically become eligible class members." Id. Citing Romasanta v. United Air Lines, Inc., 717 F.2d 1140 (7th Cir. 1983), we suggested that individual hearings could resolve this issue and determine whether potential class members were actual class members. Defendants have objected to the need for individualized determinations of class membership, arguing that class membership should be determinable from objective criteria. A slight amendment of plaintiffs' latest class definition will resolve defendants' concern regarding class membership. If the class is defined as all employee-agents, who were *subject to* certain changes in the work rules and who retired, terminated, or converted between April 1, 1998, and May 31, 1999, no inquiry into putative class members' motives is needed in order to determine class membership. Any concerns that some members of this class retired or terminated, not because of the new work rules, but due to other circumstances, can be addressed, if necessary, after a determination of defendants' liability.

This new definition forces us to revisit our analysis for class certification under Rule 23(b). While we certified plaintiffs' original class under Rule 23(b)(2), that section no longer applies to this class. Nonetheless, class certification is still proper under Rule 23(b)(3). Under Rule 23(b)(2), a class action is maintainable where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." When the class was defined as those who made an employment decision due to defendants' actions, injunctive or declaratory relief was appropriate because it would have applied to all class members. Monetary relief that class members would have received, if defendants were

found liable, would have been "incidental" because it would have flowed from the injunctive relief – inclusion in the Agent Transition Severance Plan. *See* Lemon v. International Union of Operating Engineers, Local No. 139, 216 F.3d 577, 581 (7th Cir. 2000). All class members would have been entitled to monetary damages, which could have been calculated based on objective standards stemming from Allstate's employee benefits program. *See* Barabin v. Aramark Corp., 2003 U.S. App. LEXIS 3532 at *5 (3d Cir. 2003). The same cannot be said for the newly-defined class. All class members will not be automatically entitled to relief. As mentioned above, after a determination regarding defendants' liability, individualized determinations regarding class members' damages will need to be made. Regardless, a plaintiff class need only satisfy one subsection of Rule 23(b) to be certified and this newly-defined class satisfies Rule 23(b)(3).

Rule 23(b)(3) requires (1) that common questions of law or fact predominate over those that apply only to individual class members, and (2) that a class action be the superior method of adjudicating the case. Courts have noted a "considerable overlap" between a finding of commonality under Rule 23(a) and a finding of predominance, *see* Ludwig v. Pilkington North America, Inc., 2003 WL 22478842 at *4 (N.D.Ill. 2003), such that "a finding of commonality will likely satisfy a finding of predomination." Mejdreck v. Lockformer Co., 2002 WL 1838141 at *6 (N.D.Ill. 2002)(citing Heastie v. Community Bank of Greater Peoria, 125 F.R.D. 669, 677 (N.D.Ill. 1989)). As discussed in our earlier memorandum opinion and order granting class certification, plaintiffs' § 510 claim creates a common question for all class members because it alleges that defendants harassed plaintiffs through agency-wide directives, which were applied to all employee-agents. This common question, whether Allstate's revisions to its agency standards were enacted to harass agents into retiring, quitting, or converting to

independent contractors so that they would be ineligible for certain ERISA benefits, equally applies to all class members under the newly-revised definition. Though individualized questions exist regarding the various class members damages, such as whether they retired, quit, or converted for a reason other than defendants' alleged harassment, the predominant issue arises out of a common nucleus of facts concerning defendants' revisions of employee policies. The individual issues can be resolved, if necessary, after the determination of defendants' liability. See Ludwig, 2003 WL 22478842 at *5 ("Although some individualized questions may exist, they should not defeat class certification."); In re Synthroid Marketing Litigation, 188 F.R.D. 295, 301 (N.D.Ill. 1999)("[I]f an individualized determination of proximate cause or damages becomes necessary, such questions can be resolved after the liability issue is decided . . . ."); Johnson v. Aronson Furniture Co., 1998 WL 641342 at *8 (N.D.Ill. 1998)("[I]ndividual questions of injury may be resolved after the determination of the common questions."); Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)("[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.").

Under Rule 23(b)(3) a class action must also be the superior method of adjudicating the suit. In their response to plaintiffs' original motion for class certification, defendants argued that a class action would not be the superior method of adjudication because "mini-trials" would still be required to address individual issues. The defendant in LeClercq v. Lockformer Co., 2001 WL 199840 at *7 (N.D.Ill. 2001), presented a similar argument when plaintiff homeowners sought to certify a class of individuals whose land and water was allegedly contaminated by the defendant. The court recognized conflicting precedent on the

appropriateness of class certification when individualized issues existed, but stated, "Where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." *Id.* (quoting Sterling, 855 F.2d at 1196-97 (6th Cir. 1988)). As in LeClercq, in this case defendants' liability can be determined on a class-wide basis because it rests on a common core set of facts. By trying plaintiffs' § 510 claim as a class action, both the courts and the parties are able to avoid repetition in discovery and in the courtroom. *See* LeClercq, 2001 WL 199840 at *7 ("It would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence.")(quoting Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 67 (S.D. Ohio 1991)). If defendants prevail, that ends the matter. If the class prevails, only then will we have to determine how individual claims for damages should be resolved in this court or elsewhere. Under such circumstances, we find that class certification under Rule 23(b)(3) is proper.

Defendants argue for another change in plaintiffs' proposed class definition, identifying only the versions of the Allstate Agency Standards (Standards) that are relevant. Plaintiffs' proposed class *definition* includes those who left Allstate or converted to independent contractors due to changes in the work rules documented in the September 1988 Standards, or in subsequent versions. Defendants argue that the only revisions to the Standards relevant to the class definition are those that were issued between September 1998 and May 31, 1999. They contend that revisions issued after May 31, 1999, could not have impacted an agent's decision to leave or convert to an independent contractor before that date. Though plaintiffs did not have an opportunity to respond to this argument, we will address it. Revisions of which employee-agents were unaware could not have affected their employment decision; yet,

those decisions could have been affected by revisions announced before May 31, 1999, but not implemented until after that date. Thus, to clarify defendants' requested restriction, we will limit the relevant revisions to those "announced" before May 31, 1999. The new amended class definition is:

> Allstate employee-agents, subject to Defendants' changes in work rules set forth in the "Allstate Agency Standards" of September 1998 or subsequent versions of the "Allstate Agency Standards" that were announced prior to May 31, 1999, who retired, terminated, or converted to independent contractor status between April 1, 1998 and May 31, 1999, but had not submitted notice of their retirement or resignation prior to April 1, 1998.

As we have indicated throughout, this class action will be bifurcated. We are setting aside the individualized issue of damages until after a determination of defendants' liability. If defendants are found liable, we will then proceed to resolve the issue of damages. When "it becomes necessary to adjudicate the individual issues of either damages or reliance, the Court has several options available to it." Arenson v. Whitehall Convalescent and Nursing Home, Inc., 164 F.R.D. 659, 666 (N.D.Ill. 1996). Which option the court will use to adjudicate any individualized issue, be it hearings or separate trials or some other method, is a question for another day. *See e.g.*, Calvin v. Sheriff of Will County, 2004 WL 1125922 at *5 (N.D.Ill. 2004)("If defendants are found liable, the court may then revisit the damages issue, including whether to certify another class or subclasses, or hold individual hearings, for the purpose of resolving damages."); Ibrahim v. Old Kent Bank, 2000 WL 263987 at *5-6 (N.D.Ill. 2000)(certifying class for consumer fraud action as to liability, but reserving questions of causation and damages for individual actions); Green v. Wolf, 406 F.2d 291, 301 (2d Cir. 1968)("We see no sound reason why the trial court . . . cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of

23(b)(3) will often require the use of the 'sensible device' of split trials.").

## CONCLUSION

For the foregoing reasons, plaintiffs' class definition is amended, as above described.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 1, 2005.