

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY F. FLANAGAN, JAMES W. CARSON, )
JOHN M. CHANEY, and DONALD W. JONES, )
individually and on behalf of all others )
similarly situated, )
)
Plaintiffs, )
)
vs. ) No. 01 C 1541
)
ALLSTATE INSURANCE COMPANY, an )
Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jay Flanagan, James Carson, John Chaney and Donald Jones originally brought this class action suit against defendants Allstate Insurance Company (Allstate) and its Agent Transition Severance Plan, for violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, and breach of fiduciary duty. On June 24, 2004, we granted plaintiffs' motion for class certification as to their constructive discharge claim and denied it as to the breach of fiduciary duty claim. Flanagan v. Allstate Ins. Co., 223 F.R.D. 489 (N.D. Ill. 2004). On May 6, 2005, plaintiffs amended their complaint to include a breach of contract claim. (plf. am. cplt.). Plaintiffs Flanagan, Carson and Chaney now move to certify a class with regards to this claim[1]. That motion is granted.

## BACKGROUND

The full background of this case has been expounded upon in our earlier opinions. *See* Flanagan v. Allstate Ins. Co., 213 F. Supp. 2d 862 (N.D. Ill. 2001), Flanagan v. Allstate Ins. Co.,

---

[1] Plaintiff Donald Jones is not part of this class as he was employed under a contract different from the one implicated in plaintiffs' class definition, which will be explained further below.

223 F.R.D. 489 (N.D. Ill. 2004), and <u>Flanagan v. Allstate Ins. Co.</u>, 228 F.R.D. 617 (N.D. Ill. 2005). For purposes of this motion we will limit our scope to the facts pertaining solely to the breach of contract claim.

The following facts are taken from plaintiffs' amended complaint. Plaintiffs, as agents for Allstate, worked under various employment contracts.[2] Flanagan and Carson worked as general agents, Chaney worked under an R830 contract, and Jones worked under an R1500 contract.[3] These contracts were employee-agent contracts, entitling plaintiffs to Allstate's ERISA-governed retirement and benefit plans. Allstate had another type of contract where agents were employed as independent contractors. Among numerous other differences, these agents did not participate in the ERISA benefits program. A decision was made by Allstate to convert all of its employee agents into independent contractors, eliminating ongoing contributions to ERISA plans for thousands of agents. However, Allstate could not unilaterally amend or terminate the contracts of those employee-agents operating under the R830 contract because that contract provided for lifetime employment. Employee-agents were subject to termination only for "unsatisfactory work." Therefore, in order to effectuate the plan, Allstate created a new set of uniform work rules in September 1998, entitled "Allstate Agency Standards." The new work rules allegedly were implemented to harass employee-agents into either terminating their employment or retiring, or converting to independent contractor status. These requirements included reducing or freezing office expense

---

[2] These contracts are not before the court, and therefore we are unable to outline the differences among them.

[3] Plaintiff's amended complaint distinguishes between general agents and R830 agents. (plf. am. cplt. at ¶ 85). However, based on defendants' answer to the amended complaint (def. ans. to plf. am. cplt. at ¶16), and consistent with the discovery already conducted in this case, any employee not working under the R1500 contract, or as an independent contractor, was employed under the R830 contract, whether they were a general agent or otherwise (*see* plf. motion for class certification, exhibit B at AF040039-40, AF040042).

reimbursements, extending office hours, requiring Saturday office hours, mandating attendance at multiple training sessions with little or no utility, and creating burdensome reporting requirements. As a result of these new work requirements over a thousand employee-agents retired, terminated their employment or converted to independent contractor status between December 1, 1998 and May 31, 1999 (def. second suppl. resp. to plf. first set of interrogatories at 2-3).

Subsequently, on November 10, 1999, Allstate announced a new program entitled, "Preparing for the Future." This program required that all remaining employee agents convert to independent contractor status, retire or terminate their employment. The program offered a number of possible severance benefits for those who chose to leave their employment, and different incentives to those who chose to convert. After unveiling this program, Allstate chose to retroactively apply it to those employee agents who had terminated or converted from June 1, 1999, onward.

Plaintiffs allege that Allstate had been preparing this severance package and benefit plan long before June 1, 1999. They claim that Allstate instituted its new onerous work rules with the intent of harassing as many employee agents as possible into terminating or converting before unveiling the severance and benefit packages, so as to reduce the cost of the program. Plaintiffs claim that the institution of these work rules for this purpose violated their contracts. Plaintiffs seek to certify a class consisting of "Allstate employee-agents under contracts or agreements other than the R1500 contract, subject to Defendants' changes in work rules set forth in the 'Allstate Agency Standards' of September 1998 or subsequent versions of the 'Allstate Agency Standards' that were announced prior to May 31, 1999, who retired, terminated, or converted to independent contractor status between April 1, 1998 and

May 31, 1999, but had not submitted notice of their retirement, or resignation prior to April 1, 1998."

Plaintiffs seek to exclude those employee-agents who worked under the R1500 contract, based on the court's finding in Linker v. Allstate Ins. Co., 342, Ill. App. 3d 764 (Ill. App. Ct. 2003), that the R1500 contract was an at-will contract.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure outlines the requirements necessary to certify a class action. There are two requirements, both of which must be satisfied. Part (a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Once a plaintiff satisfies these requirements, he or she must still satisfy one of the three requirements under part (b). Here, plaintiff is seeking certification under part (b)(3), which requires that:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In this motion we generally take the substantive allegations of the complaint as true and do not examine the ultimate merits of the case. Birnberg v. Milk Street Residential Assoc. Ltd., 2003 W 21267103 (N.D. Ill. 2003). However, we will probe the evidence available and "make whatever factual and legal inquires are necessary" to determine whether plaintiffs have met their burden under Fed.R.Civ.P. 23 to justify class certification. Szabo v. Bridgeport

Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001). We note that Rule 23 is to be liberally construed and that we should err in favor of maintaining a class action. King v. Kansas City Southern Indus., 519 F.2d 20, 26 (7th Cir. 1975).

Definition

Defendants first take issue with plaintiffs' class definition, arguing that it is overly broad in that it includes potential class members who may have no disagreement with the change in work rules, and who left or voluntarily converted for other reasons. First, we note that the class, as plaintiffs have defined it, is substantially similar to the ERISA class we already certified. See Flanagan, 228 F.R.D. 617. Additionally, because plaintiffs are seeking to certify this class under Rule 23(b)(3), any potential class member who does not feel she or he has been wronged by Allstate has the opportunity to opt out of the class (Rule 23(c)(2)(B)). Therefore, we find defendants' argument without merit.

Numerosity

We outlined the requirements for numerosity in our earlier certification of the ERISA class for these plaintiffs (see Flanagan, 223 F.R.D. at 492-93), but will quickly review them here. Our main concern is not solely the number of individuals constituting the proposed class, but with the practicality of joining them all in a single suit. Arenson v. Whitehall Convalescent and Nursing Home, 164 F.R.D. 659, 663 (N.D. Ill. 1996). In order to determine whether joinder is impractical, we consider not only the size of the class, but its geographic distribution, the relief sought, and the ability of the individual members to bring their own claims. There is no magic number of members required. However, "permissive joinder is usually deemed impractical where the class members number 40 or more." Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 307 (N.D. Ill. 1997).

The number of potential members of the certified ERISA class was 1282, based on numbers provided by the defendants in certain interrogatories. Plaintiffs concede that the number of plaintiffs in the breach of contract class will be smaller, since this class excludes those plaintiffs who worked under the R1500 contract. However, plaintiffs contend, and it appears likely, that the remaining plaintiffs will still be numerous enough to satisfy the numerosity requirement. Further, these same plaintiffs continue to be geographically disbursed, and because many of them left their employment any ability to pursue a claim individually may be curtailed by the balance between litigation costs and award received. *See* <u>Barner v. City of Harvey</u>, 1997 WL 139469 at *3 (N.D. Ill. 1997).

Commonality

Commonality requires the existence of questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Courts have generally described this requirement as a low hurdle to surmount, *see* <u>Gasper v. Linvatec Corp.</u>, 164 F.R.D. 51, 57 (N.D. Ill. 1996), and it is satisfied when a common nucleus of operative facts exist. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992). Where the question of law involves standardized conduct by a defendant towards a class, a common nucleus of fact is usually presented. *Id.* at 1017-18. As long as this common nucleus exists, factual differences among the class members' experiences does not preclude a finding of commonality. *Id.* at 1018.

Plaintiffs allege the common questions of law or fact related to this claim include, (1) the date on which Allstate's management first had under serious consideration the payment of severance benefits ultimately formalized in the Agent Transition Service Plan; (2) whether the onerous employment conditions imposed by Allstate were part of the program to harass and intimidate its employee-agents to retire, terminate, or convert to independent contractor

status so as to avoid paying them ERISA benefits and prevent them from becoming eligible for the future severance benefits; (3) whether Allstate's conduct amounts to a breach of contract under the duty of good faith and fair dealing, or the duty to refrain from opportunistic conduct; and (4) whether Allstate's conduct amounts to a breach of contract for terminating employees in a manner inconsistent with the terms of the contract (plf. am. cplt. at ¶68).

Plaintiffs contend that the proposed class meets the commonality requirement because it is alleging the breach of a "form" contract, the R830 contract, which is identical for all the proposed class members. It alleges that Allstate breached this contract when it administered new work rules in an attempt to harass class members into converting to independent contractor status, terminating their employment, or retiring. These work rules were placed in writing by Allstate and uniformly promulgated to all agents.

Claims arising out of form contracts are particularly appropriate for class action treatment. Cobb v. Monarch Fin. Corp., 913 F. Supp. 1164, 1171 (D. Ill. 1995) (citing Haroco, Inc. v. American Nat'l Bank and Trust Co., 121 F.R.D. 664, 669 (N.D. Ill. 1988)). Additionally, our courts have often found a common nucleus of operative facts when the defendants are, as here, alleged to have directed standardized conduct toward the putative class members. Garner v. Healy, 184 F.R.D. 598, 601 (N.D. Ill. 1999).

Defendant argues that this proposed class does not satisfy the commonality requirement because, just as we found regarding the breach of fiduciary duty claim, the breach of contract claim is dependent on various disparate oral disclosures and communications that will have to be individually assessed. See Flanagan, 223 F.R.D. 489. In support, defendant cites Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 597-98 n.17 (7th Cir. 1993), which states that "claims based substantially on oral rather than written communications are inappropriate

for treatment as class actions unless the communications are shown to be standardized." While we agree with this statement of law, it is inapposite here. Plaintiffs' allegations are based not on oral representations from various agent-managers, but from a written form contract and a set of written work rules, which were standardly distributed to all agents. Unlike the breach of fiduciary duty claim, where the finding of a breach requires individual assessments regarding the representations made to class participants in response to inquiries on the part of individual plaintiffs (Flanagan, 223 F.R.D. 489), the breach of contract claim requires no individual assessments to determine breach. The possible individual assessments regarding causation and damages, which we discuss in more detail below, do not prevent a finding of commonality under the lenient standard set out for us here.

Typicality

Typicality requires that representative plaintiffs' claims have the same characteristics as the claims of the proposed class. Flanagan, 223 F.R.D. at 496. Just as with commonality, typicality does not require that all class members' claims be identical, and factual distinctions between claims of the named plaintiffs and those of other class members will not defeat a finding of typicality. Id.

Defendants argue that the named plaintiffs' claims are not typical of the class because all named plaintiffs terminated their employment with Allstate or retired – none converted to independent contractor status. However, as the Seventh Circuit has stated, and we reiterated in our previous opinion, "a plaintiff's claim is typical if it arises from the same event or practice, or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory." Flanagan, 223 F.R.D. at 496 (citing De La Fuente v. Stokely-Van Camp, Inc, 713 F.2d 225, 232 (7th Cir. 1983)). Regardless of the type

of change each plaintiff made in his or her employment status, all made changes and did so allegedly because of a uniform change in work rules promulgated by Allstate. Therefore, named plaintiffs' claims are typical of the class in general.

## Adequacy of Representation

In determining whether there is adequacy of representation, the court inquires as to both the adequacy of named plaintiffs' counsel and the adequacy of the named plaintiffs to protect distinct interests of the absentee class members. <u>Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682, 697 (7th Cir. 1986). As with the other class certification determination in this case, defendant does not challenge the adequacy of plaintiffs' counsel to handle this type of case, but does challenge the adequacy of named plaintiffs to represent the interests of the class.

Defendants argue, as with the typicality requirement above, that named plaintiffs cannot adequately protect the interest of those class members who converted to independent contractor status, a group which comprises more than four-fifths of the proposed class. Defendants argue that because those class members are still employed with Allstate and therefore have a continuing financial interest in the well-being of the company, their interests are not the same as those of named plaintiffs, who have no current relationship with Allstate and are seeking money damages which are, defendants allege, much higher than those who converted to independent contractor status. To be clear, as we understand the complaint,[4] the damages sought by all the class members are uniform to the extent that they correspond to the benefits class members would have received had they made their employment decision after June 1, 1999. Differences in damage amounts between those who converted, as compared with

---

[4] On April 20, 2006, we entered an order granting plaintiffs leave to file a motion for leave to file an amendment to damages in order to gain a better understanding of the specific recitation of damages plaintiffs are seeking. That motion is currently pending before this court.

those who terminated or retired, are due to the benefit package Allstate put together – not due to varying interests between named plaintiffs and other class members.

Defendants' other argument fails as well. Typicality and adequacy of representation are overlapping considerations. Flanagan, 223 F.R.D. at 497. We have found named plaintiffs' claims to be typical of the class, and therefore they likely have sufficient interest in the outcome to ensure vigorous advocacy. As for those as-yet unascertained class members still employed with Allstate who may not want to take part in this action, they will be free to opt out under Rule 23(c)(2)(B).

Rule 23(b)(3)

Having met the requirements of Rule 23(a), we turn now to our analysis of plaintiffs' proposed class under Rule 23(b)(3). This rule requires that (1) common questions of law or fact predominate over those that apply only to individual class members, and (2) a class action is the superior method of adjudicating the case.

Predominance

Courts have found a significant overlap between the commonality requirement of Rule 23(a) and the predominance requirement here, such that "a finding of commonality will likely satisfy a finding of predomination." Ludwig v. Pilkington North America, Inc., 2003 WL 22378842 at *4 (N.D. Ill. 2003); Mejdreck v. Lockforner Co., 2002 WL 1838141 at *6 (N.D. Ill. 2002). In our certification of the ERISA class under this provision we found common issues of liability predominated over individual issues of proximate cause and damages. On reconsideration we adopted the language of the Seventh Circuit, which buttressed our certification by noting that individual hearings would need to be held to determine plaintiffs' motives for retiring, terminating, or converting, and what, if any, their measure of damages

would be, but that this could be done after a classwide determination of whether Allstate had in place a policy forcing its employee-agents to quit. In re Allstate, 400 F.3d 505, 508 (7th Cir. 2005). We find that individual issues do not outweigh the common issues of Allstate's liability for the same reason we found them not to outweigh common issues as to the ERISA claim (Flanagan, 228 F.R.D. at 620). We find that the individual assessments that will be held for the larger ERISA class will decide the same individual issues needed to determine breach of contract damages. Therefore, common issues predominate over individual issues in this case and judicial efficiency is promoted, not detracted from, by our certification of this class.

Defendants argue that common issues of law do not predominate in this case because, unlike the ERISA claim, the breach of contract claim is governed by state law. They argue that we would need to apply the law from various states, and that these laws create different outcomes in this case, which precludes certification. Unlike in other class actions, where varying outcomes are merely hypothetical, here, several courts have already interpreted the very contract at issue. Two courts in the Seventh Circuit, along with courts in the Fifth (applying Louisiana law) and Eleventh Circuits (applying Florida law), the District of Maryland, and a Louisiana appellate court have found the R830 contract to be terminable at-will. Two courts, an Illinois appellate court and the Northern District of California found the contract to be terminable only for cause. The California decision, defendants argue, does not apply here because there are no California plaintiffs in this class. Furthermore, defendants have provided findings showing that of the states that the parties and the court currently know plaintiffs to be residents of (Arizona, Colorado, Florida, Illinois, Michigan, New York, Pennsylvania, and Washington), only Arizona and New York "possibly" recognize a good faith

requirement in at-will employment contracts. The others, they claim, do not so recognize.[5] Defendants maintain that, based on the above, the conflicts in the application of the various laws preclude certification of the class.

Plaintiffs, conversely, argue that we need not concern ourselves with the variances in state laws because Illinois law governs this action. Plaintiffs argue, in their preliminary reply brief, that Illinois law will apply to at least some if not all plaintiffs, using choice-of-law principles (which in Illinois is the "most significant contacts" test). Plaintiffs deduce that due process would not be offended by applying Illinois law to all plaintiffs. They argue that the due process and full faith and credit clauses apply only modest restrictions on the application of forum law and are not offended as long as a state has significant contacts to create state interest such that choice of its law is not fundamentally unfair.

In their supplemental reply brief plaintiffs take a different angle. There they argue that Illinois law must apply because of the law-of-the-case doctrine. This doctrine "limits redetermination of rulings made earlier in the same lawsuit." Rekhi v. Wildwood Ind. Inc., 61 F.3d 1313, 1317 (7th Cir. 1995). Plaintiffs claim that the determination in Linker v. Allstate, 342 Ill.App.3d 764 (Ill.App.Ct. 2003), that the R830 contract is terminable only for cause, is binding on this court because the suit was between the same parties currently before this court, and plaintiffs claim it was the same suit.

We decline to decide the choice-of-law question at this stage, recognizing that we need not. The question we must answer is whether common issues predominate over individual ones. We find that regardless of whether we must apply Illinois law or the law of several states, this does not preclude certification of this class. For purposes of this analysis, then, we

---

[5] We do not pass judgment at this time as to the validity of defendant's findings in this area.

will proceed on the premise that we must apply several states laws to this case to show that class certification is still possible.

We first recognize that we are not bound by any of the decisions cited by defendants. When deciding a matter of federal question, a district court is bound by the decisions of the Circuit Court of Appeals of the circuit in which it sits, as well as by the Supreme Court. In deciding a matter of state law, however, a district court is bound by the supreme court of the state whose law it is interpreting. Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002). In the absence of state supreme court precedent on the subject, it is the duty of the federal courts to "determine the content of the state law as the highest court of the state would interpret it." *Id.* at 636. The interpretation of this contract is a matter of state law. Defendant has cited no case in which a state supreme court has interpreted this contract. The only cases cited by defendants that interpret the relevant state laws are from the Eleventh Circuit (interpreting Florida law) and the Illinois Appellate Court (interpreting Illinois law). While these decisions are persuasive on the issue, they do not control our decision in this case and thus the conflicting outcomes of those cases do not prevent us from certifying this class.

We also find that the relevant states' breach of contract laws are sufficiently similar to allow for certification. Though it is their burden, plaintiffs have failed to provide us with a comparative analysis of the similarities of state laws in this area. Endo v. Albertine, 1995 WL 170030 at *5 (N.D. Ill. 1995). However, upon a brief investigation, we find that, at least for the states in which the known plaintiffs reside, it appears the laws agree that an employment contract of indefinite duration is terminable at will by either party, absent either statutory

exceptions or language to the contrary in the contract itself.[6] Additionally, these states agree as to the elements of a breach of contract claim.[7] Because these state laws are very similar, if not identical, we find the predominance requirement satisfied.

---

[6] *See* Leikvold v. Valley View Community Hosp., 141 Ariz. 544, 546 (Ariz. 1984)("general rule is that an employment contract of indefinite duration is terminable at will"); Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 596 (Mich. 1980)("in the absence of distinguishing features or provisions or a consideration in addition to the services rendered, such contracts are indefinite hirings, terminable at the will of either party"); Geary v. U.S. Steel Corp., 456 Pa. 171, 175 (Pa. 1974)("absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason"); Smith v. Piezo Tech. & Prof'l Adm'rs, 427 So. 2d 183, 184 (Fla. 1983)("where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time"); Ford v. Trendwest Resorts, Inc., 146 Wn. 2d 146, 152 (Wash. 2002)("absent statutory, judicial or contractual modifications to the employment relationship, the at-will employment doctrine limits an employee's reasonable expectations to compensation for work performed"); Rooney v. Tyson, 91 N.Y.2d 685, 690 (N.Y. 1998)("when an agreement is silent as to duration, however, it is presumptively at-will, absent an express or implied limitation on an employer's otherwise unfettered ability to discharge an employee") Martin Marietta Corp. V. Lorenz, 823 P.2d 100, 105 (Colo. 1992)("there is a presumption that an employee hired for an indefinite period of time is an at-will employee who may be terminated for no cause whatever at any time"); McInerney v. Charter Golf, 176 Ill. 2d 482, 485 (Ill. 1997)(employment contracts in Illinois are presumed to be at-will and are terminable by either party). We did not include the law of Mississippi because the deposed plaintiff from that state retired outside of the time frame delineated for this class and therefore is not a plaintiff for purposes of this claim.

[7] Chartone, Inc. v. Bernini, 207 Ariz. 162, 170 (Ariz. Ct. App. 2004)(citing Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz. App. 48, 423 P.2d 124 (1967))(in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages); Michigan Health Care, Inc. v. Flagg Industries, Inc., 67 Mich. App. 125, 129 (Mich. Ct. App. 1976)(plaintiff's complaint alleged the existence of a contract, a breach of that contract by defendant and damages suffered as a result of the breach and, thus, it was error to grant defendant's motion for summary judgment); Williams v. Nationwide Mut. Ins. Co., 2000 PA Super 110, P6 (Pa. Super. Ct. 2000)(three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages); Abbott Lab., Inc. v. GE Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)(elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages); Citoli v. City of Seattle, 115 Wn. App. 459, 476 (Wash. Ct. App. 2002)(must establish the existence of a valid and enforceable contract, the rights of the plaintiff and obligations of the defendant under the contract, violation of the contract by the defendant, and damages to the plaintiff); W.B. David & Co. v. DWA Communs., Inc., 2004 U.S. Dist. LEXIS 2954, 6-7 (S.D.N.Y. 2004)(to state a claim for breach of contract under New York law, the complaint must allege (1) the existence of a contract, (2) the plaintiff's performance of his obligations thereunder, (3) the defendant's failure to perform his obligations, and (4) resulting damages to the plaintiff); Western Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992)(a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff); Costa v. Stephens-Adamson, Inc., 142 Ill. App. 3d 798, 799-800 (Ill. App. Ct. 1986)(to state a cause of action for breach of contract, the following elements must be alleged: (1) the existence of a contract; (2) plaintiff's performance of all contractual obligations required of him; (3) facts constituting the alleged breach; and (4) the existence of damages resulting from the breach).

Superiority

We then must determine whether a class action is the superior method of adjudicating this case. There are several factors to be weighed in making such a determination: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3). Defendant takes issue with factors (1) and (4).

Defendants first argue that the purposes of a class action would be frustrated by certification here because this is not a nominal or negative damage case and, in fact, individual plaintiffs are seeking hundreds of thousands of dollars in damages.

We recognize that one of the purposes of class certification under Rule 23(b)(3) is the ability to adjudicate small or negative damage claims on a classwide basis so that plaintiffs who would otherwise not have the financial ability to bring suit can pool their resources for litigation expenses. *See* Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997). However, this is not the only purpose of certifying a class action under this rule, nor is it a requirement that individual damages be small. *Id.* Furthermore, by defendants' own admission, the vast majority of plaintiffs in this case are ones who converted to independent contractor status. As we understand plaintiffs' complaint, the damages for those plaintiffs, outlined as the benefits they would have received had they waited to convert, include a $5,000 conversion bonus, forgiveness of certain office expense advances and moving expenses, if moving was required (plf. am. cplt. at ¶30). These

damages likely do not add up to hundreds of thousands of dollars per plaintiff, and the majority of these plaintiffs might not feel it beneficial to pursue individual suits for such damages. Additionally, the damages plaintiffs are seeking in their breach of contract claim fairly mimic the benefits they seek to receive under their ERISA claim – the damages they incurred as a result of not being eligible for Allstate's severance program. The only difference is that plaintiffs are seeking punitive damages in the breach of contract claim. Finally, because this class is being certified under Rule 23(b)(3), any potential class member who feels it more beneficial to file an individual suit may opt out of the class and do so.

Defendants argue that the class will not be manageable, for the reasons defendant argued above that the requirements of commonality and predominance were not met – that individual assessments would need to be made, and that individual issues of state law variances and factual distinctions predominate over common issues of law or fact. For the reasons discussed above, we find that this class is manageable at this time. We are already committed to individual hearings on causation and damages with regard to the ERISA class, and so those same hearings will determine damages in the smaller breach of contract class with no additional use of judicial time or resources. Furthermore, we find that it appears generally that the state laws in this area are substantially similar, and the varying decisions regarding interpretation of this contract are persuasive, but not binding on this court. We realize that it is not yet known who all of the class members will be and whether the laws of other states will be implicated. However, we are prepared to certify this class under the present conditions and if it appears through additional discovery that the class has become unmanageable, we can create subclasses or, alternatively, decertify the class.

Seventh Amendment

Finally, defendants argue that certification of this class would violate their rights under the Seventh Amendment because it would require the same issues (the "reasonableness" of the work rules) to be litigated twice, at both the liability stage and at the individual hearing stage.

The Seventh Amendment guarantees that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States." In support of their position, defendants cite In the Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995). In that case the Seventh Circuit reversed the district court's certification of a class of hemophiliacs who alleged they had been infected with the HIV virus from contaminated blood administered to them as part of transfusions. They alleged that they were infected because of negligence on the part of the drug companies that manufactured blood solids, due to the lack of testing of the blood used. The Seventh Circuit held that the class was uncertifiable because, among other reasons, the bifurcation of the trials would violate defendants' Seventh Amendment rights as the initial jury would not determine liability, but merely determine that defendants were negligent on one of two different theories. Subsequent juries would have to determine concepts of contributory negligence and proximate causation, issues which were inherently intertwined with the negligence issue, causing that issue to require relitigation over and over again.

That issue is not present in this cause of action. The states we have analyzed above agree to the general elements of a breach of contract claim: (1) existence of a contract; (2) breach of that contract (including plaintiff's performance of obligations and defendant's lack thereof); and (3) damages on the part of the plaintiff. Judge Posner aplty described the distinction in Hydrite Chem. Co. v. Calumet Lubricants Co., 47 F.3d 887 (7th Cir. 1995), where he stated:

> Tort liability requires proof...that there was injury, regardless of how much, so that if the trial is divided, as is commonly done, between liability and damages, the fact of injury belongs in the first trial and the quantification of the injury by means of an assessment of damages in the second. Liability in a contract case...does not depend on proof of injury. Proof of liability is complete when the breach of contract is shown.

*Id.* at 890-91.

In the instant case it would be determined by one jury whether or not the institution of these work rules (which were instituted by Allstate on a company-wide basis), and the reason for their institution, constituted a breach of contract. In determining whether individual plaintiffs are entitled to damages, this issue would not be relitigated. If a jury found that defendants did in fact breach the contract, that determination would not change even if it was determined that some plaintiffs did not retire, terminate or convert due to the breach, and suffered no damages.

Therefore, we find that plaintiffs have met all the requirements of Rule 23(a) and 23(b)(3) and we certify the following class for the breach of contract claim:

> Allstate employee-agents under the contracts or agreements other than the R1500 contract, subject to Defendants' changes in work rules set forth in the "Allstate Agency Standards" of September 1998 or subsequent versions of the "Allstate Agency Standards" that were announced prior to May 31, 1999, who retired, terminated, or converted to independent contractor status between April 1, 1998 and May 31, 1999, but had not submitted notice of their retirement of resignation prior to April 1, 1998.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted.

                                                   JAMES B. MORAN
                                          Senior Judge, U. S. District Court

Feb. 9, 2006.