IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAY F. FLANAGAN, JAMES W. CARSON, )
JOHN M. CHANEY, and DONALD W. JONES, )
individually and on behalf of all others )
similarly situated, )
  )
           Plaintiffs )
  )
      vs. ) No. 01 C 1541
  )
ALLSTATE INSURANCE COMPANY, an )
Illinois corporation, and the AGENT )
TRANSITION SEVERANCE PLAN, )
  )
           Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant Agent Transition Severance Plan (the Plan), moves for judgment on the pleadings as to plaintiffs' ERISA Section 510 claim. Defendant Allstate moves for judgment on the pleadings, alleging that ERISA pre-empts plaintiffs' breach of contract claim. For the following reasons, we grant the Plan's motion and deny Allstate's motion.

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Just as in a motion to dismiss under Rule 12(b)(6), we must take the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Rule 8(a)(2)), and give the defendant fair notice of the claim and the grounds upon which it rests. "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl.

Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

## The Section 510 claim against the Plan

The Plan argues that it is entitled to judgment on the pleadings regarding plaintiffs' § 510 claim. First, it is not a "person" and is therefore not a proper defendant under that section. Second, even if it could be sued, the second amended complaint makes no allegations against the Plan that would allow plaintiffs to recover. Third, the Plan could not have contributed to plaintiffs' alleged constructive discharge because it was not in existence until after the class members had terminated their employment. Plaintiffs do not argue against any of these three points, but instead state that they "object" to the motion "to the extent that [the Plan] could be deemed to be a necessary party with respect to plaintiffs' § 510 claim under F.R.C.P. 19(a)" and "to the extent that [the Plan] is otherwise required to be named as a defendant to Plaintiffs' § 510 claim in order to render complete relief to the Plaintiffs with respect to that claim" (plf. resp. at 2). Plaintiffs offer no support for their argument that the Plan is a necessary party, or that it must be named in order to afford plaintiffs complete relief. Furthermore, in Bittner v Sadoff & Rudoy Industries, 490 F. Supp. 534 (E.D. Wis. 1980), the court held that in an action under § 510 for retaliatory firing, only the defendant employer could be liable, and that there had been no failure to join indispensable party when the employee did not join the benefit plan in his claim. Accordingly, the Plan's motion for judgment on the pleadings is granted.

## ERISA Pre-emption

Allstate argues that it is entitled to judgment on the pleadings as to plaintiffs' breach of contract claim because that claim is pre-empted by ERISA. In their claim, plaintiffs, who had been working under a form contract known as the R830 contract, allege that Allstate imposed

onerous new work requirements in an effort to force plaintiffs to retire, terminate their employment, or convert to independent contractor status ahead of Allstate's implementation of the Preparing for the Future Program (PFFP). This program was implemented to end all employment under the R830 contract, and provided financial incentives to those wishing to convert to independent contractor status, and severance benefits to those who decided to end their employment. Plaintiffs allege that the PFFP was under consideration long before plaintiffs left, retired, or converted due to the new work standards, and that Allstate did not apprise them of the coming changes in an effort to save money.[1]

In their § 510 claim, plaintiffs allege that Allstate violated its duty under that provision "by harassing its employee-agents to retire, terminate, or convert to Exclusive Agent independent contractor status through the adoption of uniform changes in the work rules in the form of the Allstate Agency Standards so as to minimize their ERISA benefits under existing plans and to prevent employee-agents from attaining eligibility for the ERISA severance payments that were under consideration" (sec. am. cplt. ¶74). Furthermore, plaintiffs allege that "had they not been harassed into separation, or had they been advised of the future severance payments, they would have continued as employee-agents or deferred their separations and would have become eligible under the Agent Transition Severance Plan" (sec. am. cplt. ¶ 79). Plaintiffs seek "damages including but not limited to, the value of benefits to which Plaintiffs and class members would have been eligible under Allstate's ERISA retirement and benefit plans, had they remained employee-agents to June 30, 2000," including any and all benefits they would have been entitled to under the ATSP and the sales value of their books of business (sec. am.

---

[1] Despite Allstate's protest, we have long understood that plaintiffs were essentially alleging Allstate's motivation was to "cull the ranks" ahead of the roll-out of the PFFP, both through severance and conversion.

cplt. § 510 prayer for relief).

In their breach of contract claim, plaintiffs allege that Allstate entered into uniform contracts with its employee-agents, and that implied in each contract was a duty of good faith and fair dealing, and a duty to refrain from opportunistic conduct in depriving employee-agents of benefits otherwise uniformly extended to them. Plaintiffs allege that Allstate breached that contract by, among other things, "harassing and coercing employee-agents to retire, terminate or convert to independent contractor status prior to May 31, 1999 in order to deprive them of the rights and benefits that would be offered under the 'Preparing for the Future Program'" (sec. am. cplt ¶ 88). In connection with that claim, plaintiffs seek "actual damages...including but not limited to the losses described above including the value of Plaintiffs' salaries, commissions, books of business, and conversion bonuses" (sec. am. cplt. contract prayer for relief).

ERISA § 514(a) provides – with certain exceptions not relevant here – that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Whether a state law "relates" to ERISA is not defined by the statute, and, as several circuit courts have pointed out, the Supreme Court has been "mildly schizophrenic" on the subject. *See* Trustees of the Aftra Health Fund v. Biondi, 303 F.3d 765, 773 (7th Cir. 2002) *citing* Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 139 (1st Cir. 2000) and Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 980 (9th Cir. 2001). Fortunately, the Seventh Circuit, in Biondi, has presented an instructive path to guide courts through the "murky waters of ERISA preemption." 303 F.3d at 776.

The Biondi court summarized the three ways in which a state law could be said to have a "connection with" or "reference to" an employee benefit plan: when it "(1) mandates employee

benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA." Biondi, 303 F.3d at 774 *citing* Travelers, 514 at 658-60. In cases such as this one, where the claim of breach of contract is a traditional area of state regulation, Allstate bears "the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" *Id. quoting* De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806 (1997). Yet we recognize, as we must, that "the mere fact that States have traditionally regulated common law [breach of contract] does not, in and of itself, preclude [plaintiffs'] claim from being preempted" if "allowing the claim to go forward would thwart the statutory objectives of ERISA." *Id.*

We find, with little analysis necessary, that plaintiffs' breach of contract claim does not satisfy either of the first two categories. It does not mandate employee benefit structures or their administration, nor does it bind employers or administrators to particular choices involving their employee benefit plans. Additionally, it does not have the potential of creating a conflict between state law and ERISA, which would preclude uniform administrative practices. Thus, the only question that we must analyze is whether plaintiffs' breach of contract claim is merely an alternative enforcement mechanism to ERISA's civil enforcement provisions.

The court in Biondi notes that the "Supreme Court has identified two categories of state laws that act as alternative enforcement mechanisms to ERISA:" (1) "where the existence of a pension plan is a critical element of a state-law cause of action," and (2) "where a state statute contains provisions that expressly refer to ERISA or ERISA plans." 303 F.3d at 776 (citations

omitted). Allstate does not assert that plaintiffs' claim falls under the latter category, but under the former, in that the existence of the Plan is critical to plaintiffs' claim. For this proposition, Allstate relies heavily on the Supreme Court case, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990), and the Seventh Circuit case, Tolle v. Carroll Touch Inc., 977 F.2d 1129 (7th Cir. 1992). In Ingersoll-Rand, the Supreme Court held plaintiff's wrongful termination claim pre-empted by ERISA because the "cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan." 498 U.S. at 140. The Court noted that the Texas Supreme Court had outlined the requirements of the claim as "allow[ing] recovery when the plaintiff proves that the principle reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *Id.* In Tolle, the Seventh Circuit held that plaintiff's breach of contract and wrongful termination claims were pre-empted because the contract claim "relie[d] exclusively on the terms of Tolle's employee benefit plans as the basis for breach," and the termination claim had the ERISA benefit plan as its "underlying basis." 977 F.2d at 1136.

Until this point we have had no occasion to determine whether all of the damages plaintiffs seek are ERISA damages – a point we believe is now critical in determining whether plaintiffs' breach of contract claim is pre-empted.

Here, plaintiffs § 510 claim alleges Allstate's motivation for its harassment was to interfere with plaintiffs' ability to obtain benefits under the Plan, and plaintiffs seek those benefits in their prayer for relief. However, in their contract claim plaintiffs allege Allstate's motive was much broader – to deprive plaintiffs of the ability to qualify for benefits under the PFFP (including both Plan benefits for those agents who severed their employment, as well as conversion benefits for those who became independent contractors).

We distinguish these two types of damages because, as Allstate has argued in a previous motion, the conversion benefits are not governed by ERISA and therefore not recoverable under §510.[2] Conversely, the Plan benefits – which also fall under the PFFP umbrella – are recoverable under § 510. Because they are recoverable as ERISA damages, to the extent plaintiffs seek them in their breach of contract claim, their claim is pre-empted. Ingersoll, 498 U.S. at 140 (holding that a state law claim based on "the employer's desire to avoid...paying benefits under" the employee benefit plan was pre-empted).

The problem that this court faces, and it appears to be a unique one, is that because this is a class action suit and these proceedings have been bifurcated into a liability phase and a damages phase, we are currently unable to determine which class members are seeking what damages. Damages discovery has been suspended pending a liability determination. We do not yet know how many members of this class would have chosen to convert if offered the incentives, though we do know that a majority of the class is comprised of those who converted (sec.am.cplt., ¶67). To hold at this stage that the entire breach of contract claim is pre-empted by ERISA would unjustly result in the lack of a remedy for those plaintiffs seeking conversion damages. They would be unable to move forward on a breach of contract claim since it was pre-empted, and yet could not recover damages under § 510 since the damages they seek are not ERISA damages. We do not believe Congress, through ERISA pre-emption, sought to prevent plaintiffs from recovering damages not related to an employee benefits plan. *See* Fort Halifax Packing Co., Inc. v. Cone, 482 U.S. 1, 6 (1987)("ERISA's preemption provision does not

---

[2] At the time Allstate made this argument, we declined to address it, noting that it was not necessary to do so at that juncture. Flanagan v. Allstate Ins. Co., 2007 U.S. Dist. LEXIS 39638, *20 (N.D. Ill. May 3, 2007). However, it is necessary now, and we agree with Allstate that conversion benefits are not part of an employee benefits plan, and are therefore not recoverable under § 510.

refer to [ ] laws relating to 'employee benefits' but to [ ] laws relating to 'employee benefit plans.'").

Nor do we find it feasible at this stage to redefine the classes to account for these differences. This case has been pending for almost seven years, the class has already been notified and a trial date has been firmly set for May. In addition to having to modify and re-notify the class, the trial would be pushed back indefinitely so the parties could engage in damages discovery of thousands of class members, in an effort to understand whose claims have been pre-empted and whose have not, prior to a determination whether Allstate is liable. Therefore, at this juncture we decline to find plaintiffs' breach of contract claim pre-empted by ERISA.

## CONCLUSION

For the foregoing reasons, the Plan's motion for judgment on the pleadings is granted, and Allstate's motion is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 21, 2008.